**HAMMOND LEAD PRODUCTS, INC.,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 17783.**

United States Court of Appeals,
Seventh Circuit.

April 8, 1970.

Rehearing Denied April 30, 1970.

**32**

Owen W. Crumpacker, Hammond, Ind., Lester M. Ponder, Anton Dimitroff, Indianapolis, Ind., for petitioner-appellant, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., Crumpacker & Abrahamson, Hammond, Ind., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Michael L. Paup, Atty., U. S. Dept. of Justice, Washington, D. C., Meyer Rothwacks, Elmer J.

Kelsey, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before CUMMINGS and KERNER, Circuit Judges, and MORGAN, District Judge.[1]

CUMMINGS, Circuit Judge.

The sole question raised on this appeal is whether the Tax Court correctly found that "reasonable compensation" for executive officer William Wilke, Jr. was substantially less than the amounts Taxpayer corporation had deducted from its taxable income as ordinary and necessary business expenses.[2]

Taxpayer Hammond Lead Products, Inc. is located in Hammond, Indiana. It is engaged in the production of red and white lead, litharge and lead silicates. Some of its products are used in the glass and ceramic industries. Taxpayer commenced operations in September 1930; William Wilke, Jr. served as its president from 1930 until he became chairman of the board in early 1965. His son, William Wilke, III became secretary-treasurer in 1954 and president in 1965. Since 1954, father and son have functioned as Taxpayer's chief executive team, jointly formulating all its programs and policies.

During the fiscal years ending July 31, 1963, 1964, and 1965, Taxpayer deducted the following amounts as compensation paid to William Wilke, Jr.: $61,205.19, $75,829.40, and $89,478.33. During that time, Taxpayer's stock was principally owned by members of the Wilke family. The Commissioner determined that reasonable compensation for those years would be $33,000, $35,500, and $38,000. However, the Tax Court found that reasonable compensation for those years was $43,039.86, $55,263.45, and $66,711.73.[3] Accordingly, a deficiency judgment was entered. We affirm.

1. Judge Morgan of the United States District Court, Southern District of Illinois, is sitting by designation.

2. The Tax Court's opinion is reported in P–H Memo T.C., ¶ 69,014.

3. The Tax Court did not disturb the compensation paid Wilke III in those years, namely, $61,115.79, $75,607.11, and $90,500.42. These were virtually the same amounts the Taxpayer had paid his father.

Section 162(a) (1) of the Internal Revenue Code of 1954 permits a taxpayer to deduct as ordinary and necessary business expenses "a reasonable allowance for salaries or other compensation for personal services actually rendered" (26 U.S.C. § 162(a) (1)). Taxpayer has the burden of showing that the amounts deducted were in fact reasonable compensation. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379.

William Wilke, Jr.'s compensation consisted of a base pay of $10,000, 5% of net profits and $1 per ton of sales. The Tax Court determined that his compensation would be reasonable if $1 per ton of sales was eliminated from his compensation formula. Taxpayer does not quarrel with that method of adjustment but does contend that the entire compensation paid him in the three years in question was reasonable and fully deductible.

As stated in 4a Mertens, Law of Federal Income Taxation, § 25.69, p. 282 (1966), the factors to be considered in determining reasonableness of compensation

"are the type and extent of services rendered by the employee; the scarcity of qualified employees for the particular position; the qualifications and prior earnings capacity of the employee; the contributions of the employee to the business venture; the compensation policy of the taxpayer; the volume and amount of the taxpayer's net earnings; the location and character of the taxpayer's business, including its special or peculiar characteristics, if any; the ratio of the particular compensation and aggregate compensation to the taxpayer's gross income; the prevailing compensation paid to employees performing similar services in other comparable enterprises; and the general economic conditions."

To the extent applicable, the Tax Court considered these factors. It first noted that Mr. Wilke, Jr. had rendered valuable services to Taxpayer and therefore was entitled to substantial compensation. However, it determined that his compensation was not fixed "pursuant to a free bargain" within the meaning of Section 1.162–7(b) (2) of the income tax regulations because the formula for his compensation was adopted in 1931 when Mr. Wilke and his brother owned substantially all the corporate stock.

Pursuant to the income tax regulations, the Tax Court attempted to consider compensation paid for "like services by like enterprises under like circumstances" (Section 1.162–7(b) (3)). However, the only salary paid by a similar corporation and revealed by the record was $20,000 per year paid the general manager of Metals Refining Company from 1962 to 1964. This salary was deemed inadequate as a standard of reasonableness because that official did not bear responsibilities similar to Mr. Wilke's.

The Tax Court also considered the Taxpayer's high return on its capital stock after payment of its officers' compensation and noted that the Taxpayer consistently paid substantial dividends.

Finally, in reducing the allowable compensation below that considered reasonable for his son, the Tax Court found Mr. Wilke, Jr.'s services were focused primarily on three areas: sales, finance, and lead purchasing. His son was primarily concerned with five areas: general administration, production, new equipment and product development, sales, and lead purchasing. He had donated patents and secret processes to Taxpayer and "took a more active role in managing production and in sales and customer service." [4] He was described as a vigorous, highly competent executive and was in charge of Taxpayer's production processes that had to be carefully controlled and refined to keep pace

---

4. Taypayer's brief admits that the quoted finding "in its overall import is substantially correct."

with its customers' technology and to remain competitive in the industry. These differences justified the Tax Court in reducing the father's compensation while not disturbing the son's.

Taxpayer complains that the Tax Court reduced Mr. Wilke, Jr.'s compensation "solely because he was over 75 years of age." However, Mr. Wilke's age was only mentioned incidentally in the final footnote to the Tax Court's opinion and cannot be said to have been the motivating force of the decision rendered, particularly since the Tax Court permitted increasingly larger compensation to Mr. Wilke, Jr. during this period as he grew older.

■ Our review of this record convinces us that the Tax Court's conclusion was not "clearly erroneous," so that it may not be set aside. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

Affirmed.

MORGAN, District Judge (dissenting).

In view of the findings that father and son functioned as petitioner's chief executive team "formulating jointly all of its programs and policies," and both devoted full time to the business, the conclusion that the services of the son "were more valuable to petitioner during the years in issue" than those of the father seems "clearly erroneous" to me. The Tax Court and the majority opinion here, recognize that the son's compensation is not unreasonable and that total executive compensation is not inordinate in relation to profits. The effect of this decision, however, is to disallow such total in part and to do so by "evaluating" against each other the two members of a team who both work full time and act jointly in the important areas of the business. I am simply not possessed of sufficient wisdom to make such an evaluation, and I am not persuaded in any degree by the supposed indicia of executive value mentioned by those who have done so. Accordingly, I must register my dissent.