877 F.2d 647
 64 A.F.T.R.2d 89-5055, 89-1 USTC P 9364
 RTS INVESTMENT CORPORATION, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee (Three Cases).
Robert P. HILT, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee (Four Cases).
TRUCKS, INC., Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee (Four Cases).
Roger W. NORRIS and Sandra M. Norris, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee (Four Cases).
Thomas L. and Katharina HILT, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Thomas L. HILT, Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
Thomas L. and Norma J. HILT, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 Nos. 88-2281 to 88-2296, 88-2298 and 88-2299.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 10, 1989.
Decided June 7, 1989.
Rehearing Denied July 18, 1989.
 
 Michael O. Johanns, Lincoln, Neb., for appellants.
 Laura Marie Conley O'Hanlon, Washington, D.C., for appellee.
 Before BOWMAN and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 RTS Investment Corp., Trucks, Inc., Robert P. Hilt, Roger W. Norris and Sandra M. Norris, and Thomas L. Hilt and Katharina Hilt (collectively referred to as taxpayers) appeal from a final judgment entered in the United States Tax Court[1] finding that they were liable for income tax deficiencies for the taxable years 1977 through 1982. RTS Investment Corp. v. Commissioner, T.C.M. 1987-98 (Feb. 17, 1987). For reversal, the taxpayers argue that the tax court erred in (1) determining that portions of the salaries and management fees received by the individual taxpayers during the taxable years in issue did not constitute reasonable compensation for services rendered to the corporate taxpayers, (2) refusing to treat a 1981 payment by Trucks, Inc. as a contribution to capital, and (3) treating the disallowed compensation of Sandra Norris and Thomas Hilt for 1982 as taxable distributions of earnings and profits. We affirm.
 
 The Parties
 
 2
 This factually complex case[2] involves the consolidated appeals of five individual taxpayers, three of whom are siblings: Robert Hilt, Sandra Norris, and Thomas Hilt (the Hilt children). The other two individual taxpayers, Roger Norris and Katharina Hilt, are parties to this suit solely because they filed joint returns with their respective spouses, Sandra Norris and Thomas Hilt, during the taxable years in issue. The corporate taxpayers that are parties to this lawsuit are Trucks, Inc. (TI) and RTS Investment Corp. (RTS), both of which are closely held Hilt family corporations.
 
 
 3
 In addition to the above-named parties, certain other Hilt family businesses play roles here. Hilt Truck Lines, Inc. (HTL) was founded as a sole proprietorship in 1932 by Leroy Hilt,[3] father of the Hilt children. Leroy Hilt incorporated HTL in 1961 and elected treatment as a small business corporation under Subchapter S of the Internal Revenue Code. HTL was a motor common carrier authorized by a certificate of public convenience and necessity issued by the Interstate Commerce Commission (ICC). HTL did not own any tractors or semitrailers. Rather, it operated primarily as a broker, securing loads for independent contractors. HTL also conducted business through TI which leased semitrailers to HTL. Western Services is a partnership owned in equal shares by the Hilt children. On its partnership tax returns, Western Services describes its principal business activity as management services.
 
 
 4
 The Hilt children all began working for HTL while in grade school. There is no dispute that their collective efforts, as well as that of Leroy Hilt, contributed to the success of the family businesses. Sandra Hilt performed the bulk of the office work, Robert Hilt oversaw the operations of TI, and Thomas Hilt handled almost all of HTL's ICC work and did other legal and financial work for HTL.
 
 
 5
 In 1977, HTL was owned by Leroy Hilt, who owned 334 shares of HTL's stock, and the three Hilt children, each of whom owned 102 shares. At the end of 1977, Leroy Hilt's stock was redeemed by HTL. From the end of 1977 through 1982, HTL was owned in equal shares by the Hilt children. The board of directors was composed of the Hilts, and annual board meetings were held each May at which time officers for the following years were elected. During the years in issue, Hilt family members served as officers of HTL. On its tax returns for the years in issue, HTL did not report any dividend distributions out of current year's income. Each shareholder's share of undistributed taxable income was usually distributed in January of the following year.
 
 
 6
 At the May 1978 meeting, the HTL board resolved to engage Western Services to provide management services in 1978 for $330,000. The minutes of the May board meetings from 1979-1982 do not reflect any discussion of salaries. The HTL board resolved during the May 1979-1982 meetings to engage the management services of Western Services for "reasonable compensation." Western Services' partnership tax returns for the years 1978, 1980, and 1981 report gross receipts that are identical to the amounts deducted by HTL for management fees in those years. The ordinary income of Western Services was distributed in equal shares to each of the Hilt children in 1978, 1980, and 1981.
 
 
 7
 The Hilt children served as officers of TI during the years in issue. TI paid salary and bonuses to Robert Hilt and reported the payments as compensation to officers on its tax returns. TI also reported other income and deductions which were for management fees and services. TI paid no dividends during the years in issue.
 
 
 8
 The Hilt children served as officers of RTS during the years in issue. RTS, as has been noted, was formed in order to invest in profit-making ventures. Its investments included the trucking terminal in which the family businesses are located, two banks, and a 1500-acre farm. Although Leroy Hilt was neither an officer nor a director of RTS, he provided management and consulting services to RTS. He was heavily involved in running both the banks and the farm. RTS compensated him for these services.
 
 Procedural History
 
 9
 In his notices of deficiency to the individual taxpayers, the Commissioner disallowed substantial amounts of personal service income. The Commissioner also disallowed substantial deductions for salaries or management fees or both paid by TI and RTS.
 
 
 10
 The taxpayers challenged the Commissioner's determination that they owed income tax deficiencies for the years 1977-1982. In their consolidated cases the United States Tax Court upheld the Commissioner's arguments that portions of the salaries and management fees paid to the individual taxpayers did not constitute reasonable compensation. To the extent that the tax court found that the salaries and management fees did not constitute reasonable compensation it held that (1) such amounts, with respect to the individual taxpayers, did not qualify for the 50% maximum tax on personal service income authorized by former Section 1348 of the Internal Revenue Code of 1954; and (2) the corporate taxpayers could not deduct such amounts from their income under I.R.C. Sec. 162(a)(1). T.C.M. 1987-98 at 20-21.
 
 
 11
 After a post-trial Rule 155 computation hearing was held on February 3, 1988, the Tax Court determined the following deficiencies against each of the taxpayers:
 
 
 12
 TAXPAYER TAXABLE YEAR ENDED DEFICIENCY
Robert P. Hilt 123177 $ 46,137
 123178 49,310
 123179 40,628
 123180 5,689
 123181 11,248
 123182 48,036
Sandra M. and 123177 29,764
 Roger W. Norris 123178 35,290
 123179 20,918
 123180 11,728
 123181 14,541
 123182 48,036
Thomas L. and 123177 33,998
 Katharina Hilt 123178 44,708
Thomas L. Hilt 123180 58,322
Thomas L. and 123181 19,792
 Norma J. Hilt 123182 48,036
Trucks, Inc. 123177 124,761
 123178 80,586
 123179 93,783
 123180 56,967
 123181 43,150
RTS Investment Corp. 083178 27,126
 083180 40,481
 083181 49,014
 
 
 13
 This appeal followed.
 
 
 14
 As a preliminary matter, we address the taxpayers' contention that the decision of the tax court flies in the face of the district court's previous rulings on the issue of reasonable compensation in the context of the Hilt family businesses. See Trucks, Inc. v. United States, 588 F.Supp. 638 (D.Neb.1984), aff'd, 763 F.2d 339 (8th Cir.1985). The rule has been long-established that each tax year involves a separate cause of action. The Commissioner is therefore not barred by the doctrine of prior adjudication from litigating the issue of reasonable compensation for the tax years in issue regardless of the outcome of similar litigation for other tax years. See Commissioner v. Sunnen, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); Burford-Toothaker Tractor Co. v. Commissioner, 192 F.2d 633, 634 (5th Cir.1951), cert. denied, 343 U.S. 941, 72 S.Ct. 1033, 96 L.Ed. 1347 (1952); cf. Montana v. United States, 440 U.S. 147, 161-62, 99 S.Ct. 970, 977-78, 59 L.Ed.2d 210 (1979) (government estopped from relitigating applicability of state gross receipts tax to public contractors when "factual and legal context ... not materially altered" since resolution of first case).
 
 
 15
 The taxpayers next argue that the high salaries and management fees paid by the corporate taxpayers to the individual taxpayers were reasonable in light of the considerable savings realized by the companies on brokerage and legal fees. Because the individual taxpayers performed those functions themselves, considerable out-of-pocket savings inured to the benefit of the corporate taxpayers.
 
 
 16
 The determination of what is reasonable compensation is a question of fact; thus, the standard of review to be applied by this court is the clearly erroneous standard. E.g., Charles Schneider & Co. v. Commissioner, 500 F.2d 148, 151 (8th Cir.1974) (Charles Schneider ) (citations omitted), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). The burden of proving reasonableness of compensation is on the taxpayer, Standard Asbestos Mfg. & Insulating Co. v. Commissioner, 276 F.2d 289, 293 (8th Cir.), cert. denied, 364 U.S. 826, 81 S.Ct. 63, 5 L.Ed.2d 54 (1960), and "close scrutiny" is required of salary arrangements between a corporation and its shareholders. Id. at 294 (quoting Heil Beauty Supplies, Inc. v. Commissioner, 199 F.2d 193, 194 (8th Cir.1952)). In making its factual findings the tax court is the exclusive judge of the credibility of the witnesses. Charles Schneider, 500 F.2d at 155 (citations omitted).
 
 
 17
 The tax court considered the following factors in making its decision: (1) employee qualifications; (2) the nature, extent and scope of the work; (3) the size and complexity of the business; (4) prevailing general economic conditions; (5) compensation as a percentage of gross and net income; (6) compensation compared to distributions to shareholders; (7) compensation compared to non-shareholder employees and to prior years; and (8) prevailing rates of compensation for comparable positions in comparable concerns. See id. at 152 (citations omitted).
 
 
 18
 Were we sitting as finders of fact, we might have reached different conclusions about what constituted reasonable compensation to the taxpayers in the instant case. We are not prepared, however, to state that the tax court was clearly erroneous in its findings. The tax court carefully set out its reasoning in its memorandum opinion. Although we are uneasy with the amount of compensation disallowed by the tax court, we are not "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 
 19
 The taxpayers next argue that the tax court erred in refusing to treat a 1981 payment to TI as a contribution to capital and in refusing to treat disallowed compensation paid by HTL to Sandra Norris and Thomas Hilt as loan repayments. The tax court correctly refused to rule on these arguments because they were not raised in a timely manner. The taxpayers did not raise these arguments until the post-trial Rule 155 computation proceeding and are thereby precluded on these issues. See Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 312-13, 53 S.Ct. 150, 151, 77 L.Ed. 325 (1932) (former Rule 50 of Board of Tax Appeals); Bryant v. Commissioner, 790 F.2d 1463, 1468 (9th Cir.1986); Rule 155(c), Rules of Practice and Procedure of the United States Tax Court.
 
 
 20
 While, as indicated, had we been trying this case de novo we might have reached somewhat different results, we find no error of law, we find substantial record evidentiary support for the decision of the Tax Court, and it appearing that a more full opinion would have no precedential value, the motion to strike appellee's brief is overruled and the judgment of the Tax Court is affirmed. See 8th Cir.R. 14.
 
 
 
 [1]
 The Honorable Mary Ann Cohen, United States Tax Court Judge
 
 
 [2]
 Individual actions were consolidated in the Tax Court; thus at times we refer collectively to those actions in the singular
 
 
 [3]
 Leroy Hilt and his wife, Molly Hilt, were parties to this case in the tax court. Due to their residency in Las Vegas, Nevada, venue for their appeal is in the United States Court of Appeals for the Ninth Circuit. I.R.C. Sec. 7482(b)(1)(A). Hilt v. Commissioner, No. 88-7331 (9th Cir. filed Aug. 18, 1988)