**Richard G. CLINE and Carole J. Cline, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 93–2698.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1994.

Decided Sept. 2, 1994.

---

Richard Farber; Gary R. Allen, Charles Bricken, Steven W. Parks (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for respondent-appellee.

Before WOOD, Jr., EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Richard G. Cline, a former senior executive of Jewel Companies, Inc. ("Jewel"), disputes the tax treatment accorded certain payments he received at the time of his resignation from Jewel Foods. The Tax Court concluded that these payments were received in connection with the acquisition of Jewel by American Stores Company ("American Stores") and constituted "excess parachute payments" under 26 U.S.C. § 280G of the Internal Revenue Code. Consequently, the payments were subject to the golden parachute payments excise tax imposed under 26 U.S.C. § 4999. Mr. Cline and his wife Carole J. Cline, who is a petitioner by virtue of having filed a joint return with her husband, appeal the Tax Court's decision. We have jurisdiction to review the decision under 26 U.S.C. § 7482(a). For the reasons that follow, we affirm.

I

## BACKGROUND

### A. *Statutory Provisions*

The "golden parachute" provisions, 26 U.S.C. §§ 280G and 4999, were added to the Internal Revenue Code by the Deficit Reduction Act of 1984 in order to discourage the use of golden parachutes—payments to senior executives of a company in the event of a corporate takeover. *See* 1 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 22.2.5, at 22–35 (1989). Congress found that agreements to make such payments hindered "acquisition activity in the marketplace" by making target corporations less attractive to prospective suitors. *Id.* (quoting Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess. 199 (J.Comm. Print 1984)). The prospect of a handsome

Roger J. Jones (argued), Joel V. Williamson, Thomas C. Durham, Bruce L. Gelman, Mayer, Brown & Platt, Chicago, IL, for petitioners-appellants.

payment tends to encourage management personnel of the target corporation to favor a proposed takeover, regardless of whether the takeover would be in the best interests of the target corporation's shareholders. The payments promised to the executives also decrease the amounts paid to the target corporation shareholders. For these reasons, Congress made such parachute payments "nondeductible to the payor and subject to an excise tax of 20 percent, in addition to the regular income tax, in the hands of the recipient." *Id.* at 22–36.

The provisions contain a complex set of definitions and interrelated applications. Section 280G(b) defines both "parachute payment" and "excess parachute payment," and section 4999(a) imposes a twenty-percent excise tax on excess parachute payments. For purposes of this case, section 280G defines a "parachute payment" as a payment to a corporate officer that is made contingent on a change in the control or ownership of the corporation. *See* §§ 280G(b)(2)(A)(i)(I) & 280G(c)(2). To fall within the definition, however, the present value of that payment must equal or exceed three times the individual's "base amount," § 280G(b)(2)(A)(ii), which is the average of the individual's compensation for the previous five years, §§ 280G(b)(3) & (d)(2). The parachute payment rules do not apply to a payment that the individual establishes, by clear and convincing evidence, to be "reasonable compensation" for personal services rendered on or after the date of acquisition of the corporation. § 280G(b)(4). An "excess parachute payment" is defined to mean any parachute payment that exceeds the individual's "base amount." § 280G(b)(1). To the extent the rules apply, therefore, "any excess of the payments over the recipient's average annual compensation is generally nondeductible." [1] 1 Bittker & Lokken, *supra*, ¶ 22.2.5, at 22–37. The officer-recipient must pay a 20 percent excise tax on the amount the employer may

not deduct. 26 U.S.C. § 4999(a); *see* 1 Bittker, *supra*, ¶ 22.2.5, at 22–37.

### B. *Facts*

Both American Stores and Jewel were engaged in the sale of food, drug, and general merchandise through their retail stores. American Stores first made known its interest in acquiring Jewel and merging the two entities in mid-April 1984. Although Jewel management at first rejected the idea, American Stores (through the A.S. Acquisition Company) made a tender offer on June 1, 1984. After negotiations, Jewel's board of directors formally considered and accepted the proposed merger on June 14, 1984.

On June 15, 1984, Mr. Cline and other senior managers [2] of Jewel Company each entered into a severance pay agreement. The stated purpose of the agreement was to "foster the continuing employment of [Jewel's] key management personnel" during the change in control. Ex. 44–AR at 1 (Appellant's App. 3). This original agreement provided that, if an executive were terminated as a result of the merger, he would receive an amount equal to three times the sum of his annual salary and target bonus in effect either on the date of change in control or on the date of termination, whichever amount was greater.

On July 12, 1984, American Stores announced that it had control of Jewel. On the same date, Jewel entered into amended severance agreements with its senior executives. The parties had to amend the agreements because, at the time the earlier agreements were executed, the general counsel of each of the two merging stores had erroneously believed that the "golden parachute" provisions of the Deficit Reduction Act (then newly-enacted) applied only to agreements entered into after June 15, 1984, the date the original severance agreements were executed. The "golden parachute" provisions, however, actually applied to agreements entered into

---

**1.** "Although the limitation usually does not apply unless a golden parachute exceeds 300 percent of average annual compensation, once this threshold is crossed, the deduction is lost for excess over 100 percent of average annual compensation." 1 Bittker & Lokken, *supra*, ¶22.2.5, at 22–37.

**2.** Five senior executives of Jewel were found by the Tax Court to be responsible for tax deficiencies. Only Mr. Cline has appealed.

after June 14, 1984. Thus, under the original agreements, the executives' severance payments would be subject to the excise tax and Jewel would be unable to deduct those payments. The companies therefore revised their agreements by reducing the severance pay amount so that it would not be considered an excess parachute payment under sections 280G and 4999.

The amended severance agreement signed by each executive expressly stated that their severance pay was reduced to avoid imposition of the golden parachute excise tax:

> Jewel Companies, Inc. (the "Company") entered into an agreement with you dated June 15, 1984, under which the Company agreed to pay you certain benefits upon termination of employment. You have offered to reduce the amount payable to you under the Agreement with the intended result that no amount payable to you shall become subject to an excise tax under the so-called "golden parachute" provisions of the tax legislation which had recently been enacted by Congress, but has not yet been signed into law by the President of the United States. You have requested that termination of your employment by the Company be eliminated as a condition to your rights under the Agreement. Your proposal is acceptable to the Company.

Ex. 45–AS at 1 (Appellant's App. 4). American Store's general counsel and a senior vice president assured the Jewel executives that American Stores intended to make a good faith effort to offer them employment to make up for the reduction in severance pay. American Stores did in fact employ the Jewel executives after the acquisition of Jewel. According to a senior vice-president of American Stores handling the matter, the compensation of these individuals was determined by considering the difference between the severance pay amounts in the original and amended agreements, not by the time spent performing additional services. He testified that a $300,000 bonus Mr. Cline received in April 1985 was approximately equal to the amount by which the amended agreement reduced his severance pay.

Prior to the merger, Mr. Cline had been president and chief operating officer of Jewel; his annual salary was $365,000, and his target bonus in 1984 was $110,000. Mr. Cline's amended agreement eliminated termination of employment as a condition of his right to receive benefits. It also limited his lump-sum benefit to $1,210,000, an amount below his individual golden parachute tax level, $1,216,197. His amended agreement superseded other agreements, and its benefits were in lieu of any to which he would have been entitled. On July 13, 1984, the day after American Stores announced that it had control of Jewel, he became chairman of the board and chief executive officer of Jewel. His annual salary was increased accordingly to $475,000. Pursuant to the amended severance agreement, Mr. Cline received $1,210,000 in severance pay in 1984. Mr. Cline remained with Jewel during the transition period, until February 3, 1985. When he resigned, he received $409,163 as compensation for his services from January 1, 1985 through February 2, 1985. Some of that amount, $109,163, is attributable to his pro-rated annual salary of $475,000, his unused vacation pay, and other miscellaneous items. The remainder is a $300,000 bonus. The Commissioner of Internal Revenue (the "Commissioner") agreed that $109,163 of the $409,163 was a reasonable month's compensation for Mr. Cline in 1985, but that no portion of the $300,000 bonus constituted reasonable compensation. Accordingly, the Commissioner concluded that the amount of income tax deficiency Mr. and Mrs. Cline owed under the golden parachute payment excise tax was $60,000 for 1985.

## C. Tax Court Proceedings

Following a two-day trial and post-trial briefing by the parties, the Tax Court ruled that the bonus payments made to Mr. Cline and the other executives involved in the case constituted parachute payments. The court reviewed the executives' original severance agreements, as well as the amended written agreements that reduced the amounts of severance pay so that the pay would not be deemed an excess parachute payment. Based on the evidence, the Tax Court found that Jewel and American Stores had entered into two separate agreements with Mr. Cline

and his associates when it became apparent that the original severance agreements were not satisfactory arrangements because of the new tax provisions at issue here. The first of these new agreements, the Tax Court held, was the written agreement by which Mr. Cline agreed to accept a reduction in severance pay. The second new agreement was an oral agreement under which American Stores became obligated to use its best efforts to employ the executives in order to compensate them for the reduction in their severance pay. American Stores had in fact employed the executives; however, it compensated them, not according to the time spent performing such services, but by the amount of reduction of their severance benefits.

The Tax Court concluded that American Stores' payments of this additional compensation were contingent on a change in control of Jewel, and therefore constituted parachute payments. In reaching this conclusion, the court dismissed as irrelevant the fact that, under this second oral agreement, the compensation was also subject to a second contingency, the best efforts of the company to employ them. It noted that to allow such a second contingency to control would provide an easy way by which any person in Mr. Cline's position could avoid the golden parachute provisions by simply agreeing to diminished severance compensation in return for a commitment that the company would use its best efforts to employ him. The difference in severance pay could then be taken into account in fixing an inflated salary upon that reemployment.

The Tax Court also determined that the payments did not meet the "reasonable compensation" exception under § 280G(b)(4)(A). According to the Tax Court, the legislative history establishes a presumption "that no parachute payment is reasonable compensation for personal services actually rendered," a presumption that can be rebutted "only by clear and convincing evidence." The court found that Mr. Cline and his fellow executives failed to overcome that presumption. In reaching this conclusion, it relied heavily on the statement of the cognizant American Stores officer that, in fixing compensation for

Mr. Cline and his associates, he did not consider comparable compensation paid other individual for similar services. Nor did he consider the amount of time that he would be required to perform the duties of the position. He also admitted that, in the usual course of its business, American Stores did not compensate resigning employees with bonuses or additional consulting arrangements. The court therefore sustained the deficiencies determined by the Commissioner.

## II

## ANALYSIS

■ On appeal, Mr. Cline submits that the Tax Court erred in its determination that the $1,210,000 lump sum payment and the $300,000 bonus can be aggregated to constitute a golden parachute payment. In Mr. Cline's view, the fundamental flaw in the reasoning of the Tax Court is its determination that Mr. Cline entered into two agreements with his employer on July 12, 1984: a written agreement for lump sum severance pay in the amount of $1,210,000 and an oral agreement for employment that resulted in a $300,000 "bonus" the following year when he terminated his employment. Mr. Cline contends that there is no connection, legal or factual, between these two payments. Consequently, he submits, the two cannot be characterized accurately as a parachute payment. He also contends that the $300,000 represented "reasonable compensation," thereby exempting the payment from the parachute payment provisions pursuant to section 280G(b)(4). Before considering each argument in turn, we note that we apply the same standards of review to a tax court decision that we apply to district court determinations in a civil bench trial: We review questions of law de novo; we review factual determinations, as well as application of legal principles to those factual determinations, only for clear error. *Estate of Whittle v. Commissioner,* 994 F.2d 379, 381 (7th Cir. 1993).

## A.

We first address Mr. Cline's submission that the Tax Court erred in concluding that

there was an adequate connection between the contract for a lump sum payment and the later payment of the bonus. In Mr. Cline's view, a parachute payment must be grounded in an enforceable contract if it is to be, as the statute requires, a payment contingent on a change in ownership. Additionally, he claims that the Tax Court's ruling that there was an oral contract cannot be squared with the record. The bonus, Mr. Cline submits, did not arise out of *any* agreement, but rather was a discretionary recognition by American Stores of his contributions to the successful merger of Jewel and American Stores. Because Mr. Cline was told explicitly that future employment could not be promised to him, he posits that there was no factual basis for the Tax Court's decision that there was an oral agreement obligating American Stores to use its best efforts to employ Cline in order to compensate him for the reduction in his severance pay.

 We cannot accept Mr. Cline's contention that the record will not support the finding of the Tax Court that there was an agreement between Mr. Cline and his employer for the payment of the bonus as part of his severance package. The Tax Court's finding that a contract or agreement existed is a factual determination. *Cf. International Bhd. of Boilermakers v. Transue & Williams Corp.*, 879 F.2d 1388, 1391 (6th Cir.1989); *United Slate, Tile & Composition v. G & M Roofing*, 732 F.2d 495, 498 (6th Cir.1984). We do not disturb such a finding of fact unless it is clearly erroneous. A finding of fact is clearly erroneous only when *it is against the clear weight of the evidence*, or when the appellate court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) (citations omitted). Here, the Tax Court found that the following facts supported its determination that there was an oral agreement for additional compensation:

> We base our finding that American Stores agreed to use its best efforts to employ [the executives] in order to compensate them for the reduction in their severance pay on the undisputed testimony

of Messrs. Berrey [Jewel's general counsel] and Bergeson [American Stores' senior vice president], and on Mr. Sunday's [American Stores' general counsel's] notes. Mr. Berrey testified that American Stores intended to compensate [the executives] for the reduction in severance pay under the amended severance agreements. Mr. Bergeson testified that he told [the executives] that American Stores intended to use its best efforts to compensate them for the reduction in severance pay under the amended severance agreements. And, according to his notes, Mr. Sunday told [the executives] that American Stores would consider their efforts to make the post-acquisition transition as smooth as possible.

*Balch v. Commissioner*, 100 T.C. 331, 344–45, 1993 WL 106707 (1993). These findings are amply supported by the record. The subsequent actions taken by the parties also are consistent with the existence of an oral agreement between American Stores and Mr. Cline: American Stores offered the executives employment; Mr. Cline and the others accepted the offer; and the executives were compensated in a manner that was calculated to compensate them for the reduction in their severance pay.

 There is some evidence to support Mr. Cline's factual assertions. He points out that there were substantial non-tax purposes for entering into the Amended Agreement, and therefore challenges the Tax Court's holding that the Amended Agreement and the "oral additional compensation agreement" were actually a reiteration of the original Agreement. Whether an activity had a tax-related purpose is a finding of fact that we review for clear error only. *Living Faith, Inc. v. Commissioner*, 950 F.2d 365, 371 (7th Cir.1991). Mr. Cline admits that he and Jewel both had a tax-related purpose in revising the terms of the Agreement and reducing the amount of the benefits to which Mr. Cline was entitled. Mr. Cline's admission of the tax-related purpose, when combined with the other facts and circumstances surrounding the amended agreements, supports the Tax Court's determination that there was an agreement designed to camou-

flage a parachute payment. The Tax Court's finding in favor of the Commissioner is not against the clear weight of the evidence. We shall not disturb its findings on appeal.

Mr. Cline also contends that his bonus cannot be a parachute payment as a matter of law because it was not a payment to which he had a right by virtue of a *legally enforceable* agreement. According to Mr. Cline, section 280G's provisions presume the existence of a contractual agreement for the section to apply. Mr. Cline claims that Illinois law would treat American Stores' "best efforts" oral promise to employ him as too vague and indefinite to be enforceable.

We cannot accept Mr. Cline's view that a legally enforceable agreement is a necessary predicate to a determination that the payments constitute a golden parachute for purposes of the Tax Code. The language of the statute is the best starting point. A review of the basic provisions of the statute reveals that the golden parachute provision applies to *any* payment that is contingent on a change in ownership or control; it does not require that the payment be made pursuant to a legally enforceable agreement or contract. Moreover, in construing section 280G, the Tax Court undertook a careful analysis. Because the statute does not define the phrase "contingent on a change in·control," the Tax Court turned to the House of Representative's Conference Report on the Deficit Reduction Act, which stated that the payment is contingent on a control change if the payment would not have been made had no change in control occurred. *See* 100 T.C. at 344. The Conference Report also states that the determination whether payment is "contingent on a change in control" is to be made "under all the facts and circumstances." *See id.* (quoting H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 851 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 1539). Casting its conclusion in the very terms of the Conference Report, the Tax Court found that, based on all the facts and circumstances, Mr. Cline would not have received his additional compensation had there been no change in control of Jewel.

In its analysis, the Tax Court also pointed to an illustration presented in the General Explanation of the Act which reflects Congress' recognition that an agreement entered into "pursuant to a formal or informal understanding" suffices under the parachute provisions:

> Example (3). Assume that a disqualified individual is a common law employee of a corporation. A change in control of the corporation occurs, and, pursuant to a *formal or informal understanding* reached before the change occurs, the individual enters into an employment agreement, consulting agreement, agreement not to compete, or similar arrangement with the acquiring company for a term of 3 years. An amount equal to the value ... of payments to be made under such an agreement is to be treated as contingent on the change in control.

100 T.C. at 348 (quoting Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess. 201–02 (J.Comm.Print 1984) (emphasis added)). Mr. Cline asserts that the example demonstrates that a payment is subject to sections 280G and 4999 only if made pursuant to an "agreement ... or similar arrangement." Such a reading misses the main point of the example: the "agreement" or "similar arrangement" between the individual and the acquiring company can arise by virtue of "a formal *or informal* understanding" (emphasis added). The result of such an agreement or arrangement, according to the example, is that payments made pursuant to the agreement are parachute payments. In this case, the Tax Court concluded in similar fashion that the value of payments made under the amended severance agreement (made pursuant to the oral understanding or agreement) was to be treated as a parachute payment.

We agree with the Tax Court that section 280G's applicability is not contingent on the existence of a legally enforceable agreement. The term "agreement" is in the statute, legislative history, and even the nonbinding proposed regulations, but there is no mention of or reference to any requirement that such an agreement be a legally enforceable one. Accordingly, whether the oral agreement the Tax Court found to have ex-

isted fails for indefiniteness under Illinois law, as Mr. Cline contends, is of no import.[3]

In analyzing the payments made to Mr. Cline (and the other executives), the Tax Court made the following findings: (1) that the Jewel executives originally contracted for substantial severance payments just before American Stores was to take control of Jewel; (2) that they amended the contracts when they discovered that the payments would be taxable to them and nondeductible to the acquiring company; (3) that they agreed to take less pay upon severance; and (4) that they were offered positions by American Stores for a short "transition period" and were paid essentially what they would have received with the original severance agreement. It concluded that Jewel, American Stores, and the executives had entered into two different agreements in exchange for the executives' amended severance pay agreements: a written amended severance agreement, under which the severance pay was reduced to come within the "safe harbor" of the golden parachute tax; and a second oral compensation agreement, under which American Stores became obligated to use its best efforts to employ Mr. Cline and the others, in order to compensate them for the reduction in their severance pay. The Tax Court's finding of an oral additional compensation agreement between Mr. Cline and Jewel is factually supported by the record and legally supported by the plain language of the statute. The Tax Court, considering the facts and circumstances of the case, was entitled to conclude that the second oral agreement was made simply to circumvent tax restrictions. We therefore shall not disturb the Tax Court's finding that there was an oral agreement and that the $300,000 Mr. Cline received in April 1985 ought to be considered a component of a parachute payment.

**B.**

Mr. Cline's second contention is that the record demonstrates that the bonus he received represented "reasonable compensation" for services he rendered during the transition period after American Stores' acquisition of Jewel. He describes the additional responsibilities he assumed, without added compensation, for Jewel during the merger—responsibilities for which he says he was awarded a $300,000 bonus when he resigned. Because Mr. Cline asserts that his bonus and total compensation are comparable to the levels of compensation earned by executives in comparable positions, he contends that both were reasonable. Accordingly, Mr. Cline submits that the amount of the bonus should be excluded when determining whether he has received an excess parachute payment.

The determination of what is "reasonable compensation" is a question of fact, which we review only for clear error. *See RTS Investment Corp. v. Commissioner,* 877 F.2d 647, 650 (8th Cir.1989) (per curiam); *see also Rutter v. Commissioner,* 853 F.2d 1267, 1271 (5th Cir.1988); *Hammond Lead Prods., Inc. v. Commissioner,* 425 F.2d 31, 34 (7th Cir.1970). The burden of proving the reasonableness of the compensation is on the taxpayer. *Hammond Lead Prods.,* 425 F.2d at 33. In making its factual findings, the Tax Court is the exclusive judge of the credibility of the witnesses. *RTS Investment,* 877 F.2d at 650.

In determining that the additional compensation was not reasonable under § 280G(b)(4)(A) for services rendered after the change in control, the Tax Court employed as its decisional standard the congressional conference committee's presumption of unreasonableness that may be rebutted only

---

**3.** We also find persuasive the Tax Court's analysis of the ease with which executives could sidestep the parachute payment provision by recharacterizing their severance pay:

> Applying petitioners' reasoning, any disqualified individual could avoid taxation of his parachute payment by utilizing such a strategy. For example, a disqualified individual might seek to reduce his severance pay to an amount less than three times his base amount in exchange for the acquiring company's promise to use its best efforts to employ and compensate him after the change in control. Then, after the change in control, to make up for the reduction in his severance pay, the acquiring company could employ the individual for an amount in excess of reasonable compensation, thereby avoiding the adverse tax consequences of sections 280G and 4999.

100 T.C. at 345.

by clear and convincing evidence. *See* 100 T.C. at 349. The court also employed the three factors offered by the Joint Committee on Taxation for determining whether compensation is reasonable: the individual's historic compensation, the duties to be performed under the contract, and the compensation of individuals of comparable skills. *See id.* at 350. The Tax Court made these findings: (1) An American Stores executive admitted at trial that, when determining the compensation to be paid to Cline and the other executives for their transition period work, he did not consider comparable compensation paid to other individuals for similar services; (2) other employees of American Stores were not usually given bonuses or additional consulting arrangements when they resigned; and (3) the executives presented no evidence to support their argument that the reasonable amount of their compensation should be greater than the amount of their historic compensation because their continued presence had additional value. *See id.* Based on these findings, the court determined that the executives, including Mr. Cline, failed to prove by clear and convincing evidence that the amounts of their additional compensation were reasonable.

The Tax Court's analysis of the "reasonable compensation" provision of the golden parachute payments statute is correct and its subsequent conclusion that Mr. Cline did not establish that the bonus constituted reasonable compensation is supported by the record. We cannot say that the court clearly erred in determining that the $300,000 bonus payment was in reality compensation for the amended agreement's reduction of Mr. Cline's severance payment. The court was therefore warranted in considering the $300,000 bonus a component of a parachute payment.

### Conclusion

For the foregoing reasons, the judgment of the Tax Court is affirmed.

AFFIRMED.