**FORUM GROUP, INC., et al., Appellants,**

**v.**

**Royce HARRELL, Wayne S. Tush, Ken Veil, Wayne L. Beverage and Larry L. Laird, Appellees.**

**In re FORUM GROUP, INC., et al., Debtors.**

**No. IP 93–1436 C.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 28, 1995.

---

Thomas C. Scherer, Bingham Summers Welsh & Spilman, Indianapolis, IN, for appellants.

Thomas G. Burroughs, Leonard Opperman, Bose McKinney & Evans, James D. Blythe II, Butler, Brown & Blythe, Indianapolis, IN, for appellees.

## ENTRY

BARKER, Chief Judge.

This appeal arises out of the objection of Forum Group, Inc. ("Forum") to the claims of five former executive officers (collectively, "the Executives" or "the Claimants") for damages resulting from the rejection of their pre-petition Termination Benefits Agreements ("TBA's"). The Bankruptcy Court allowed the claims. For the reasons set forth below, we reverse.

## I. FACTUAL BACKGROUND

Forum owns and operates retirement communities in several states. On February 15, 1991, certain of its bondholders filed an involuntary bankruptcy petition against Forum in the bankruptcy court for the Northern District of Texas. Subsequently, on February 19, 1991, Forum filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of Indiana. All proceedings were then consolidated in this district and assigned to Bankruptcy Judge Frank J. Otte. Forum thereafter operated its business as a Debtor in Possession pursuant to 11 U.S.C. § 1107 and § 1108.

After the petition date a Creditors' Committee and an Equity Security Holders' Committee (the "Equity Committee") were appointed to represent the respective interests of Forum's unsecured creditors and shareholders. Each was authorized to employ counsel and the Creditors' Committee was additionally authorized to employ accountants and a financial advisor. In Chapter 11 proceedings, the committees *inter alia* examine the desirability of continuing a debtor's business and participate in the formulation of a plan of reorganization. *See* 11 U.S.C. § 1103.

Negotiations to restructure Forum's debt and negotiate a consensual plan of reorganization took place among Forum, certain secured creditors, the Creditors' Committee and the Equity Committee. The negotiations continued for several months and, at times, became highly acrimonious. Finally, the Creditors' Committee and Forum agreed to the terms of a proposed plan of reorganization. On August 9, 1991, Forum filed its Third Amended and Restated Joint Plan of Reorganization ("the Plan") and an accompanying Second Amended and Restated Disclosure Statement ("the Disclosure Statement"). Subsequently, the Equity Committee abandoned a competing plan and agreed to support Forum's plan.

The Bankruptcy Court confirmed the Plan on April 2, 1992. The Plan and disclosure statement included provisions that:

(1) restructured the secured creditors' debt;

(2) recapitalized Forum by exchanging pre-petition debt for equity in the reorganized Forum, (the pre-petition unsecured creditors were to own 93% of Forum's new common stock);

(3) allowed pre-petition shareholders to retain an approximate 7% ownership of Forum's new common stock;

(4) gave the Creditors' Committee the right to select the officers and directors of the reorganized Forum;

(5) gave the Equity Committee the right to name one initial director of the new Forum;

(6) rejected a variety of pre-petition agreements, including the Claimants' TBA's.

In June, 1992, after the Plan had been confirmed, Forum terminated the employment of four of the Claimants (one claimant was not terminated until October, 1992). After their termination, each filed unsecured claims for damages arising from Forum's rejection of their TBA's. The Bankruptcy Court allowed the claims over the objections of Forum in the following amounts:

| Claimant | Amount |
|---|---|
| Wayne S. Tush | $471,689.12 |
| Royce D. Harrell | 495,806.25 |
| Wayne L. Beverage | 282,530.84 |
| Larry L. Laird | 316,872.75 |
| Kenneth J. Veil | 296,500.65 |

In addition, the court awarded attorneys' fees in the sum of $17,496 to counsel for Tush, Beverage, Veil and Laird, and the sum of $11,707 to counsel for Harrell.

## II. DISCUSSION

### A. Standard of Review

 The standard this Court must apply when reviewing decisions of the Bankruptcy Court is set forth in Rule 8013 of the Federal Rules of Bankruptcy Procedure:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses.

Thus, to the extent the Court determines that there are facts in dispute, the standard of review as to those factual findings is whether they are clearly erroneous. *Matter of West,* 22 F.3d 775, 777 (7th Cir.1994); *Matter of Tolona Pizza Products Corp.,* 3 F.3d 1029 (7th Cir.1993). A bankruptcy court's conclusions of law, however, are subject to de novo review. *Matter of Voelker,* 42 F.3d 1050, 1051 (7th Cir.1994); *Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994).

## B. Claimants' Are Not Entitled to Benefits Under the TBA's

■ The Executives were each parties to identical TBA's. These agreements, which are commonly called "golden parachutes," seek "to protect executives in the event that their employment terminates upon or subsequent to a change in control of the Corporation." Robert H. Winter, *et al.*, Shark Repellents and Golden Parachutes, A Handbook for the Practitioner 425 (1983); *see Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 3 n. 2, 105 S.Ct. 2458, 2460 n. 2, 86 L.Ed.2d 1 (1985) ("The term 'golden parachute' refers generally to agreements between a corporation and its top officers which guarantee those officers continued employment, payment of a lump sum, or other benefits in the event of a change of corporate ownership"); *In re Hooker Investments, Inc.*, 145 B.R. 138, 149 (Bankr.S.D.N.Y.1992).[1]

According to the terms of the agreements at issue here, the Claimants are entitled to benefits only if they are terminated from Forum within one year after the occurrence of an "acquisition of control." Paragraph 4(a) of the TBA's defines an "acquisition of control" in pertinent part as follows:

> As used herein, the term "Acquisition of Control" means ... a change in a majority of the members of the Board of Directors of the Company during any two (2) year period *unless the new directors were elected or recommended by two-thirds (2/3) of the members of the Board of Directors in office at the beginning of such period....*

(Termination Benefits Agreement, at p. 6) (emphasis added). Thus, under this agreement, an acquisition of control requires (1) that a majority of Forum's directors be replaced within a two-year period, and (2) that

their replacements not be "elected or recommended" by the previous board.

Both parties agree that the first requirement—that a majority of the directors be replaced within a two-year period—was satisfied in this situation. They differ greatly, however, on whether the old board "elected or recommended" the new directors.

■ Under Indiana law,[2] "the touchstone of contract interpretation is to determine the parties' intent." *Trustees of First Union Real Estate Equity and Mortgage Investments v. Mandell*, 987 F.2d 1286, 1289 (7th Cir.1993). Courts will therefore give words or phrases in the contract their usual and common meaning. *Id.* at 1290. Courts must also "'make all attempts' to interpret a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Id. citing Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1316 (Ind.App.1991).

■ When the terms of a contract are unambiguous as written, those terms are conclusive as to the contract's meaning. *Mandell*, 987 F.2d at 1289. However, "to the extent an instrument is ambiguous we may consider the situation of the parties, their motives in dealing with each other, and the object sought to be accomplished in determining the intent of the parties." *Michels v. Dyna–Kote Industries, Inc.*, 497 N.E.2d 586, 589 (Ind.App.1986) (citation omitted).

In light of these principles, we hold that the old directors "recommended" the new directors within the meaning of paragraph 4(a). Significantly, the prior directors "strongly recommend[ed] that Holders of Claims and Interests in Voting Classes vote to accept the Plan." (Disclosure Statement, at p. 61; *see also* pp. 2, 41–42). The Plan[3] in turn called for the reconstitution of the board of directors and specifically identified the

---

**1.** *See also Cline v. Comm'r of Internal Revenue*, 34 F.3d 480, 486 (7th Cir.1994) (Tax Code defines a golden parachute agreement to include "any payment that is contingent on a change in ownership or control").

**2.** Although neither party tackles the choice-of-law question, we are confident that Indiana law applies. First, the TBA's expressly stipulate to Indiana law as governing their dispute. (Termination Benefits Agreement, at p. 12). Moreover, when parties fail to consider the choice of law

issue, "the substantive law of the forum is presumed to control." *Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663, 681 n. 33 (7th Cir.1986).

**3.** Under sections 1121(a) and (b) of the Bankruptcy Code, the debtor is afforded the exclusive right to file a reorganization plan for at least 120 days after the commencement of the chapter 11 case.

new board members chosen as replacements. (Disclosure Statement, at p. 44; App. 9). Thus, when Forum recommended the Plan as a whole, it concomitantly recommended each particular component of the Plan, including the provisions calling for and identifying the new slate of directors.

In response, the Claimants make two arguments. First, they point out that the Plan gave the exclusive right to *select* Forum's new directors to the Creditor's Committee and not the prior board. As a result, they argue that "any argument that the Old Directors had any input in the *selection or election* of the new directors" is contrary to the provisions of the Plan. (Brief of Appellees, at p. 15) (emphasis added). We agree. However, we do not contend that the prior directors *selected* or elected the new directors. Nor do the TBA's require that they do so. Rather, paragraph 4(a) of the contracts requires only that the prior directors "elect or recommend" their replacements, not that they "select and recommend" them. Thus, this contention is unavailing.

Second, the Claimants liken the reorganization of Forum to a hostile change in control. For example, the Claimants point out that the creation of a reorganization plan was "an extremely hostile transaction with great acrimony between Forum and the Committees." (Brief of Appellee, at 19).[4] Moreover, after the reorganization, Claimants were terminated without warning and given one hour to collect their belongings and leave the building, actions which are "typically attendant to a hostile takeover in the non-bankruptcy context." *Id.* at p. 20. Thus, since golden parachutes are generally intended to protect executives from being terminated without cause after a hostile takeover, Claimants argue that the TBA's presumably apply in this situation as well.

Although we do not dispute Claimants' characterization of the reorganization process

as "hostile" or "acrimonious," we note that the contracts in this case simply do not use those terms to define an "acquisition of control." Rather, these agreements are triggered when a majority of Forum's directors are replaced with new directors who were neither elected nor recommended by the previous board. Moreover, we are hesitant to call the recapitalization of an insolvent company pursuant to a plan of reorganization a hostile takeover. According to the Supreme Court:

> [B]ankruptcy causes fundamental changes in the nature of corporate relationships. One of the most painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors.

*Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985). Indeed, "[c]reditors effectively own bankrupt firms." *Kham & Nate's Shoes No. 2 v. First Bank of Whiting,* 908 F.2d 1351, 1360 (7th Cir.1990). Thus, once a debtor files a chapter 11 petition, its creditors can no longer be thought of as a hostile outside force. This is especially true where, as here, the change in control occurred with the approval of the bankruptcy court and the various creditor and equity committees.

In sum, the Claimants' TBA's shift many of the risks of management displacement from the executive to the corporation. *See International Ins. Co. v. Johns,* 874 F.2d 1447, 1465 (11th Cir.1989). However, they do not shift all such risks. Specifically, the TBA's allocated to the Executives the risk that the board of directors would recommend new directors who were unsympathetic to the interests of existing management. The endorsement and ascent of a new board indifferent to the Claimants is essentially what happened here. Accordingly, we hold that the Executives are not entitled to benefits under the terms of the TBA's.[5]

---

4. Indeed, the Bankruptcy Judge attested to the hostility that existed throughout the reorganization process in unequivocal terms: "I've had this case from the very beginning, and if [the new directors are] not hostile ... then that word must have a new definition as far as I'm concerned." (Transcript of June 8, 1993, Hearing, at p. 142).

5. After a hearing, the Bankruptcy Court allowed the claims, at least in part, because the Debtor did not inform Claimants about the rejection of their TBA's until after their jobs were terminated. As a result, Forum was able to retain the Executives' services during a time of great instability when, according to their testimony, they otherwise would have sought employment elsewhere.

## III. CONCLUSION

Because the old directors recommended the Plan and the Plan provided for a new board, Forum's reorganization did not constitute an "acquisition of Control" as defined in paragraph 4(a) of the TBA's. We therefore hold that the Executives are not entitled to receive benefits under their TBA's. Accordingly, we REVERSE the Bankruptcy Court's allowance of the Executives' claims.

It is so **ORDERED.**

---

We share the Bankruptcy Court's concern about this seemingly unfair treatment. However,
 [i]n commercial transactions ... the question is not what is fair but what comports with the contract.... Contracts allocate risks, and judicial reallocation interferes with not only negotiation but also the economic processes the contracts govern. By enforcing contractual language rather than molding it until the outcome looks more fair *ex post*, courts in the end serve all contracting parties' interests.
*PSI Energy, Inc. v. Exxon Coal USA, Inc.,* 17 F.3d 969, 974 (7th Cir.1994). Thus, since the express languages of the TBA's requires that the new board not be elected or recommended by the previous board, the Executives are not entitled to termination benefits.