Henry S. HEMINGWAY, Plaintiff,

v.

UNITED STATES of America,
et al., Defendants.

No. 2:97–CV–374(C).

United States District Court,
D. Utah,
Central Division.

June 16, 1999.

David E. Salisbury, Kenneth W. Yeates, Van Cott Bagley Cornwall & McCarthy, Salt Lake City, UT, for plaintiff.

Kirk C. Lusty, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

CAMPBELL, District Judge.

This matter is before the court on plaintiff's motion for summary judgment. The court conducted a hearing on plaintiff's motion on May 20, 1999, at which plaintiff was represented by Kenneth Yeates, and defendant was represented by Kirk Lusty. Having fully considered the arguments of counsel, the submissions of the parties, and applicable legal authorities, the court now enters the following order.

### Background

The plaintiff is the personal representative of the estate of Richard Hemingway. Plaintiff seeks to recover from the Internal Revenue Service ("IRS") $231,212.23 in taxes and interest paid by Mr. Hemingway as a result of the IRS's determination that certain payments received by Mr. Hemingway were "excess parachute payments" subject to a tax penalty.

Mr. Hemingway served as Chairman of the Board of two banks, Commercial Security Bank ("CSB") and Idaho Bank and Trust ("IBT"). In 1987 and 1988, CSB and IBT entered into negotiations with KeyCorp, in which KeyCorp sought to acquire the two banks as KeyCorp subsidiaries.

On January 28, 1987, Hemingway and CSB entered into a contract ("First CSB Contract") in which Hemingway agreed to provide consulting services to CSB and to not compete with CSB for a period of three years. CSB agreed to pay Hemingway the lesser of $200,000 or an amount that would not constitute a parachute payment, each year for a period of three years. On March 31, 1987, Hemingway, CSB and KeyCorp entered into a contract ("Second CSB Contract"), in which Hem-

ingway agreed to provide consulting services and not to compete with KeyCorp for six years. KeyCorp agreed to pay Hemingway $175,000 each year for six years. The Second CSB Contract provided that if KeyCorp acquired CSB, the First CSB Contract would be null and void, and if KeyCorp did not acquire CSB, the Second CSB Contract would become null and void. KeyCorp merged with CSB on March 31, 1987.

On July 27, 1987, Hemingway and IBT entered into a contract ("First IBT Contract") in which Hemingway agreed to provide consulting services to IBT and to not compete with IBT for three years. IBT agreed to pay Hemingway $100,000 each year for three years. On January 14, 1988, Hemingway, IBT and KeyCorp entered into a contract ("Second IBT Contract"), in which Hemingway agreed to provide consulting services and not to compete with KeyCorp for ten years. Key-Corp agreed to pay Hemingway $100,000 each year for ten years. The Second IBT Contract provided that if KeyCorp acquired IBT, the First IBT Contract would be null and void, and if KeyCorp did not acquire IBT, the Second IBT Contract would become null and void. KeyCorp merged with IBT on January 14, 1998.

For the years 1989 through 1994, Hemingway received payments pursuant to the Second CSB Contract and the Second IBT Contract. Following an audit, the IRS assessed additional taxes plus interest for the years of 1989 through 1994 based on a determination that the payments received from KeyCorp were subject to a tax penalty on "golden parachute payments." *See* 26 U.S.C. §§ 280G (defining "parachute payments") & 4999 (imposing 20% excise tax on "excess parachute payments"). In the fall of 1995, additional taxes and interest totaling $231,212,23 were paid to the IRS.

Plaintiff's motion for summary judgment asks this court to determine, as a matter of law, that payments made by an acquiring company do not constitute parachute payments under § 280G of the Internal Revenue Code.

### Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1552 (10th Cir.1997).

Plaintiff argues that the payments made by KeyCorp to Hemingway were not parachute payments within the meaning of 26 U.S.C. § 280G because they were made pursuant to an agreement with the acquiring company, KeyCorp, and not with the larger companies, CSB and IBT. Section 280G defines "parachute payment" as follows:

> (A) In general.—The term "parachute payment" means any payment in the nature of compensation to (or for the benefit of) a disqualified individual if—
>
> (i) such payment is contingent on a change—
>
>> (I) in the ownership or effective control of the corporation, or
>>
>> (II) in the ownership of a substantial portion of the assets of the corporation, and
>
> (ii) the aggregate present value of the payments in the nature of compensation to (or for the benefit of) such individual which are contingent on such change equals or exceeds an amount equal to 3 times the base amount.

26 U.S.C. § 280G(b)(2)(A).

The statute does not specify whether an agreement by an acquiring corporation can

constitute a parachute payment contract. However, the statute is written broadly to cover *"any* payment" which is contingent on a change in ownership or control of a corporation. 26 U.S.C. § 280G(b)(2)(A) (emphasis added). The plain language of the statute would seem to encompass agreements between acquiring companies and employees of the target company.

The legislative history of § 280G indicates that the statute has a dual purpose. First, Congress intended to discourage the use of parachute payment contracts between a corporation and its officers to defend against hostile takeovers. For example, the Senate Finance Committee explained the reasons for enacting § 280G as follows:

> The committee realizes that corporations anticipating the possibility of a hostile takeover attempt frequently, as a defensive tactic, enter into "golden parachute" contracts with key personnel. *Golden parachute contracts come in several forms.* Under a *typical* golden parachute contract, the corporation agrees to make special payments to a key officer in the event that the corporation is successfully taken over.

S. Prt. 98–169, 98th Cong., 2d Sess. 195 (April 2, 1984) (emphasis added). In enacting § 280G, Congress clearly intended to penalize "agreements between a corporation and its top officers which guarantee those officers continued employment, payment of a lump sum, or other benefits in the event of a change of corporate ownership." *Schreiber v. Burlington Northern, Inc.,* 472 U.S. 1, 4 n. 2, 105 S.Ct. 2458, 86 L.Ed.2d 1 (1985). However, Congress did not limit the scope of § 280G to these types of parachute payment contracts.

Second, § 280G was also intended to discourage employees of the target corporation from entering into contracts with the acquiring corporation that would "handsomely reward[ ] [those employees] if an acquisition took place." Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess. 199–200 (1985). The Joint Committee on Taxation noted that "Congress was concerned that the existence of such arrangements tended to encourage the executives and other key personnel involved to favor a proposed takeover that might not be in the best interests of the shareholders or others." *Id.* at 199. For example, an employee of a target corporation might tend to support an unfavorable takeover when the employee "enters into an employment agreement, consulting agreement, agreement not to compete, or similar arrangement with the acquiring company for a term of three years" before the takeover occurs. *Id.* at 202; *see also Cline v. Commissioner of Internal Revenue,* 34 F.3d 480, 486–87 (7th Cir.1994) (holding that payments made by an acquiring company may constitute parachute payments regardless of whether payments are made pursuant to formal agreement or informal understanding). This is precisely the type of parachute payment contract at issue in this case.

The regulations enacted by the IRS also support an interpretation of "parachute payments" which includes both payments made by the target corporation and payments made by the acquiring corporation. The regulations state that "parachute payments" under § 280G may be paid directly or indirectly by the corporation experiencing a change in ownership or control or "by a person acquiring ownership or effective control of that corporation or ownership of a substantial portion of that corporation's assets." Reg. § 1.280G–1 (Q & A–10).[1]

The plain language of the statute, the legislative history, and the regulations in-

---

1. Plaintiff relies on Regulation § 1.280G–1 (Q & A–21) which states that "compensation" means "compensation which is payable by the corporation with respect to which the change in ownership or control occurs." Although

§ 280G indicates that " 'parachute payment' means any payment in the nature of compensation," the term "compensation" is primarily used in determining an amount to which the parachute payment is compared. *See* 26

dicate that sections 280G and 4999 are not limited to payment contracts made by the target corporation. To the contrary, the tax penalty applies to *all* payment agreements contingent upon a change of control of the employee's corporation. Therefore, payment agreements entered into by an acquiring corporation may constitute parachute payments.

### Order

For the foregoing reasons, plaintiff's motion for summary judgment is DE-NIED.

SO ORDERED.

U.S.C. § 280G(b)(3) & (4). Therefore, Q & A–21 appears to apply to § 280G(b)(3) & (4), which discuss calculation of the base amount and the treatment of amounts established as reasonable compensation, and not to the definition of "parachute payment" in § 280G(b)(2).