In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3963

STEVEN H. TOUSHIN,

Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from the United States Tax Court.
No. 21724-92--Juan F. Vasquez, Judge.

Argued June 7, 2000--Decided August 2, 2000

Before POSNER, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.  On October 27, 1988, a jury sitting in the Northern District of Illinois convicted the petitioner Steven H. Toushin ("Toushin") of filing false income tax returns for the taxable years of 1980, 1981, and 1982, but this court reversed his conviction due to an improper jury instruction. See United States v. Toushin, 899 F.2d 617 (7th Cir. 1990). Before his second trial commenced, Toushin agreed to plea guilty to one count of filing a false income tax return for the 1980 tax year, and was sentenced to time already served.

Thereafter, on July 1, 1992, the Internal Revenue Service ("IRS") initiated a civil proceeding against Toushin to recover unpaid income taxes. Concluding that Toushin fraudulently under-reported his income for the taxable years of 1980, 1981, and 1982, the IRS issued a notice of tax deficiency and levied penalties for fraud as well as substantial underpayment for those years. He then sought review in the United States Tax Court, which sustained the IRS's determination after a four day bench trial. Toushin appeals the judgment of the Tax Court, arguing that the court erred in calculating his unreported income for the tax years of 1980, 1981 and 1982, and in concluding that he fraudulently under-reported his income. We AFFIRM.

## I. BACKGROUND

During the 1970s, Toushin was a partner in an enterprise that owned and operated several theaters, including the Bijou Theater/1 in Chicago, Illinois. As a result of a dispute among the partners of the enterprise, the assets were placed into receivership from 1976 until 1978 in order that they might achieve a more accurate accounting of the daily receipts and deposits.

During this receivership period, Toushin experienced severe financial difficulties--he borrowed money from relatives, was frequently overdrawn on his personal checking account and took a job as a janitor at his in-law's business. When he gained control of the Bijou theater in 1978, his financial situation began to improve dramatically after he began "skimming cash proceeds from" the theater./2

As previously mentioned, on August 8, 1991, Toushin agreed to plea guilty to filing a false income tax return for the 1980 tax year. In the plea agreement, Toushin made several admissions:

during the calendar year 1980, . . . he received income from skimming cash proceeds from Entertainment and Amusement, Inc., through operation of the Bijou Theater, which additional income he knew he was required to report and which he knowingly did not inform his accountant of, thereby evading inclusion of that cash income on his joint individual tax return for 1980. . . . He agrees that the amount of the unreported skimmed cash income for 1980 totalled [sic] approximately $59,411.35.

Based in part on this admission, the IRS levied penalties for fraud and substantial underpayment for the tax years of 1980, 1981 and 1982, and also initiated a civil proceeding against Toushin to recover unpaid taxes for those years. On May 20, 1999, the Tax Court affirmed the IRS's determination, concluding that the I.R.S. had "established by clear and convincing evidence an underpayment of tax for 1980, 1981, and 1982" and that the I.R.S. had "clearly and convincingly proven that the entire underpayments of tax for 1980, 1981, and 1982 were due to fraud."/3 Toushin v. Commissioner, No. 21724-92, T.C. Memo 1999-171, 1999 WL 317336 (U.S. Tax Ct. May 20, 1999). Toushin appeals.

## II. ISSUES

On appeal, Toushin argues that: (1) the Tax Court erred in calculating his unreported income for the 1981 and 1982 tax years; and (2) the

court erred in determining that he fraudulently underreported his income in the 1981 and 1982 tax years.

III.  ANALYSIS
A.  Cash on Hand

We note at the outset that Toushin on appeal does not contest the Tax Court's finding that he underreported his income in 1980 and that his underreporting for that year was fraudulent. But Toushin contends that the Tax Court erred in calculating his unreported income for 1981 and 1982 by failing to account for cash he had on hand/4 prior to 1980. He argues that his unreported income for 1981 and 1982 is attributable to nontaxable sources, namely $80,000 cash that he allegedly had in his home safe as of January 1, 1980./5

"[W]e apply the same standards of review to a Tax Court decision that we apply to district court determinations in a civil bench trial: We review questions of law de novo; we review factual determinations, as well as application of legal principles to those factual determinations, only for clear error." Cline v. Commissioner, 34 F.3d 480, 484 (7th Cir. 1994). "A finding of fact can be reversed as clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Coleman v. Commissioner, 16 F.3d 821, 826 (7th Cir. 1994). Further, "this court, in determining whether there is substantial evidence to support a finding of fact by the Tax Court, must view the evidence in the entire record in the light which is most favorable to the finding." Pittman v. Commissioner, 100 F.3d 1308, 1313 (7th Cir. 1996).

Toushin argued before the Tax Court that "he had a cash hoard [cash on hand] of at least $80,000 in his home safe as of [January 1, 1980]." But the Tax Court found his testimony less than credible:

Petitioner admitted in his guilty plea that he had unreported skimmed income from the Bijou in 1980 totaling $59,411. This figure was computed based on cash on hand of $0 as of January 1, 1980. By his plea, petitioner thus implicitly admitted that he had no cash hoard [cash on hand] as of January 1, 1980. Additionally, there is ample evidence that petitioner experienced serious financial problems between 1976 and 1978 when his assets were in receivership. Petitioner's allegations of a cash hoard was inconsistent, implausible, and not supported by objective evidence in the record.

Upon review of the record, we agree with the Tax Court and are convinced that the court had a reliable basis on which to find that Toushin did not have any cash on hand as of January 1, 1980. The record reflects that he was forced to borrow money from relatives in 1975 and 1976, worked as a janitor in 1976, overdrew his checking account in 1978 and 1979, had about $75 in his checking account at the end of 1979 and had closed his savings account in 1979. Furthermore, Toushin borrowed money from his business enterprise (Entertainment & Amusement, Inc.) in 1979, failed to make timely payments on his credit cards in 1978 and 1979, paid for a plane ticket in 1979 in installment payments and was denied a loan in 1979 after furnishing a financial statement that did not list any cash as an asset. Toushin also borrowed money from his in-laws in 1979 to purchase a condominium but failed to repay the loan through December of 1979. Indeed, Toushin's dire economic circumstances prior to January 1, 1980 are highly inconsistent with his allegation that he had $80,000 cash on hand. Thus, in light of the substantial evidence of his difficult economic situation, we conclude that the Tax Court's conclusion that he had no cash on hand as of January 1, 1980 was not clearly erroneous./6 We are of the opinion that the Tax Court's calculation of his unreported income for the tax years of 1981 and 1982 was proper.

B. Fraud

Next, Toushin contends that the Tax Court erred in finding that his underpayment of tax in 1981 and 1982 was due to fraud under 26 U.S.C. sec. 6653./7 Specifically, he claims that his underpayment of taxes was, in fact, due to a good faith mistake as he reported his unreported income on the corporate return of an adult theater business he owned in California.

The IRS bore the burden of proof to establish by clear and convincing evidence that Toushin's underpayment (or "any part" of his underpayment) of tax in 1981 and 1982 was due to fraud. See 26 U.S.C. sec. 7454(a); Pittman, 100 F.3d at 1319. Furthermore, "[a] finding of fraud by the Tax Court is a finding of fact that will not be set aside unless clearly erroneous." Pittman, 100 F.3d at 1319.

To establish fraud, the IRS must demonstrate by clear and convincing evidence that the taxpayer intended to evade taxes that he knew or believed he owed. See Pittman, 100 F.3d at 1319; Granado v. Commissioner, 792 F.2d 91, 93 (7th Cir. 1986). Because there is rarely direct evidence of a

taxpayer's state of mind, the IRS may establish fraudulent intent through circumstantial evidence. See Pittman, 100 F.3d at 1319. Indeed, "'[t]here is nothing novel about establishing a crime through the use of circumstantial evidence, for . . . circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable.'" United States v. Ranum, 96 F.3d 1020, 1026 (7th Cir. 1996) (quoting United States v. Hatchett, 31 F.3d 1411, 1421 (7th Cir. 1994)). "[C]ommon sense should be used to evaluate what reasonably may be inferred from circumstantial evidence." United States v. Briscoe, 896 F.2d 1476, 1506 (7th Cir. 1990) (citation omitted).

In Spies v. United States, the Supreme Court stated that:

We would think affirmative willful attempt [to defeat and evade taxes] may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

317 U.S. 492, 499 (1943); see Pittman, 100 F.3d at 1319.

In this case, the Tax Court found, and we agree, that Toushin exhibited several indicia of fraud:

The evidence establishes that petitioner consistently and substantially understated his income in 1980, 1981 and 1982. Petitioner maintained inadequate records for . . . his businesses. Petitioner destroyed existing records at the Bijou and instructed [the manager of the Bijou] to destroy any records kept. . . . Petitioner attempted to disrupt the IRS's criminal investigation by sending [the manager of the Bijou] on vacation and counseling [him] to lie to agents when questioned. . . .

We find that [the IRS] has clearly and convincingly proven that the entire underpayments of tax for 1980, 1981, and 1982 were due to fraud.

See also Estate of Upshaw v. Commissioner, 416 F.2d 737, 741 (stating that "a consistent pattern of understatement of substantial amounts of income" and "[t]he failure to keep such accurate records is a strong indicium of fraud with intent to evade taxes"). We also note that Toushin

admitted to "skimming cash proceeds" from the Bijou Theater and pled guilty to filing a false income tax return for 1980. The record is replete with evidence in support of the Tax Court's finding that Toushin clearly demonstrated that he deliberately evaded paying taxes. The Tax Court did not commit clear error in concluding that the IRS clearly and convincingly demonstrated that his underpayment of tax in 1981 and 1982 was due to fraud. See Pittman, 100 F.3d at 1320.

Because Toushin's arguments on appeal are utterly meritless, we also give Toushin 14 days to show cause why he should not be sanctioned for filing a frivolous appeal. See Fed. R. App. P. 38; Cohn v. Commissioner, 101 F.3d 486, 487 (7th Cir. 1996) (per curiam).

The judgment of the Tax Court is

AFFIRMED.


/1 An adult sex business was conducted in the Bijou Theater, which included the selling of sex paraphernalia and booths for sexual encounters.

/2 As the Tax Court found, with the cash he skimmed from the Bijou, during 1978 and 1979, Toushin "pa[id] for family expenses. . . . [and] gave his wife $400 (later $600) a week in 'walking around money.' He made cash purchases of expensive items such as a luxury automobile and a mink coat. He also paid for the family's vacations in cash."

/3 The IRS had determined that Toushin underreported his income by $59,411 in 1980, $57,656 in 1981 and $43,757 in 1982. Commonly referred to as the "cash method," the IRS calculated his unreported income as the amount that his cash expenditures exceeded his sources of cash (including cash on hand at the beginning of the tax period in question) for the particular year. See United States v. Hogan, 886 F.2d 1497, 1509 (7th Cir. 1989).

/4 Commonly referred to as "cash hoard."

/5 Toushin contends that his $80,000 cash on hand was comprised of: $40,000 he earned from the Bijou from 1971 to 1975; a $30,000 check dated April 19, 1978 that he received from the Bijou receiver; a $3720 check dated March 8, 1979 that he received from the Bijou receiver; a $1438 money order from Amalgamated Bank in July 1978; and a $5000 inheritance from his grandmother in 1976.

/6 Toushin also contends that the appearance of

financial difficulties are explained by the fact that he tried to hide assets from his wife to make himself look impoverished at the time of his divorce. Contrary to his assertion, the Tax Court found Toushin's testimony about his financial troubles "vague and contradictory." Because we defer to the Tax Court on credibility findings, see Fed. R. Civ. P. 52(a); Cline, 34 F.3d at 487; Gold Emporium, Inc. v. Commissioner, 910 F.2d 1374, 1379 (7th Cir. 1990), and based on the above recounted evidence in the record, we are convinced that the Tax Court was justified in rejecting his argument.

/7 In 1980 and 1981, 26 U.S.C. sec. 6653(b) provided that "[i]f any part of any underpayment . . . of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." In 1982, section 6653(b)(1) & (2) provided the same penalty plus a penalty amount "equal to 50 percent of the interest payable under section 6601 [Interest on Underpayments]."