T.C. Memo. 2009-233

UNITED STATES TAX COURT

JAMES R. AND CAROL K. MCCORMACK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21722-07.          Filed October 8, 2009.

<u>Keith Wolak</u>, for petitioners.

<u>Justin D. Scheid</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, <u>Judge</u>:  Respondent determined deficiencies of

$9,908 and $7,734 in petitioners' Federal income taxes for 2000

and 2001, respectively.[1]  Respondent also determined that Carol K.

McCormack (petitioner) is liable for fraud penalties under

_____

[1]All dollar amounts are rounded to the nearest dollar.

section 6663 of $7,431 and $5,801 for 2000 and 2001, respectively.[2]

The issues for decision are: (1) Whether petitioner is liable for fraud penalties under section 6663; and (2) whether respondent is time barred from assessing petitioners' tax liabilities for the subject years.

## FINDINGS OF FACT

When they filed their petition, petitioners resided in Indiana. The parties have stipulated some facts, which we so find.

A.    Petitioner's Educational and Professional Experience

In 1982 petitioner graduated from Purdue University, Calumet Campus, with a concentration in general management accounting, which included a semester course in tax accounting. Since then, she has held various accounting and auditing jobs. For instance, beginning about 1986, she was controller for Petrolink, Inc., a fuel oil marketing and trading operation with sales of $50 million per year. In this position she supervised staff accountants, prepared financial statements on both the accrual and cash basis methods, and filed State and Federal fuel oil tax and payroll reports.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In 1989 petitioner went to work for the United Food and Commercial Workers Local 100-A Health and Welfare Fund (the Fund). As administrative assistant to the managing director and president, she was second in command of the Fund and responsible for managing it when the managing director and president were absent. She was also controller and director of personnel, with responsibilities that included managing the entire financial and accounting function for the Fund, supervising the accounting staff, preparing and filing the Fund's quarterly and annual payroll taxes and Federal unemployment tax returns, and ensuring the accuracy of Forms W-2, Wage and Tax Statement, for all Fund employees.

B.    Petitioner's Embezzlement Activities

Between 1997 and October 2001 petitioner embezzled over $110,000 from the Fund. She used the embezzled funds for personal purposes to pay her mortgage and vehicle loans, monthly bills, and everyday expenses. She maintained no records of the cash she embezzled or the manner in which she spent it. She reported none of these embezzled funds on her tax returns.

As described in more detail below, the funds that petitioner embezzled came from union members' health insurance premium payments and copayments.

1. <u>Embezzlement of Premium Payments</u>

As required by the Consolidated Omnibus Budget Reconciliation Act (COBRA), the Fund offered continued health insurance coverage to union members who lost their jobs or had their work hours reduced. Most of these union members made monthly COBRA premium payments to the Fund in cash. Petitioner was responsible for depositing these cash payments into the Fund's bank account. She was also responsible for recording and depositing certain reimbursement checks the Fund received from health insurance companies.

Each month one of the Fund's accounting clerks (or occasionally petitioner herself) would prepare an original and a carbon copy deposit slip for the COBRA payments and record the deposit in the Fund's journal. Petitioner would remove some of the COBRA-payment cash and substitute reimbursement checks in the same amount. She would destroy the original deposit slip and prepare a new one showing the deposit of the checks she had substituted for the cash she had taken. She would retain the carbon copy of the original deposit slip and attach it to the bank deposit receipt. She would destroy the vouchers for the substituted checks so that they were never recorded on the accounting records of the Fund. In this manner petitioner embezzled $27,623 in 2000 and $20,085 in 2001.

2. Embezzlement of Mammogram Copayments

The Fund operated the Union Medical Center, which provided health care services to union members who contributed to the Fund. Fund plan participants were required to make $20 cash copayments for mammograms performed at the Union Medical Center. Petitioner was responsible for accounting for the copayments and depositing them into the Fund. Petitioner embezzled mammogram copayments totaling $3,360 in 2000 and $3,660 in 2001.

C. Criminal Conviction

In 2005 petitioner pleaded guilty to embezzling approximately $110,310 from her employer. She was convicted, sentenced to 12 months and 1 day of imprisonment, and ordered to pay $91,654 in restitution.

D. Petitioners' Tax Returns and the Notice of Deficiency

Petitioner prepared and timely filed petitioners' joint Forms 1040, U.S. Individual Income Tax Return, for 2000 and 2001.[3] They did not report the embezzled funds as income.

By notice of deficiency dated June 21, 2007, respondent determined that petitioners had failed to report embezzled funds of $30,983 and $23,745 in 2000 and 2001, respectively. Respondent also determined that petitioner was liable for the section 6663 fraud penalty.

_____

[3]The record does not indicate the exact dates petitioners filed their returns.

OPINION

Petitioners do not dispute the deficiencies resulting from their failure to report the embezzled funds as income.  They dispute the fraud penalty imposed against petitioner and contend that respondent is time barred from assessing their 2000 and 2001 tax liabilities.

A.  Fraud

Section 6663(a) imposes a penalty on the taxpayer if any part of a tax underpayment is due to fraud.  The burden of proof is upon the Commissioner to show by clear and convincing evidence that the fraud penalty applies.  Sec. 7454(a); Rule 142(b).  To satisfy his burden of proof, the Commissioner must establish both that (1) an underpayment exists for each year, and (2) some part of the underpayment is due to fraud.  See DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

It is well settled that embezzled funds are taxable income. See, e.g., James v. United States, 366 U.S. 213, 219 (1961); Rappaport v. United States, 583 F.2d 298, 302 (7th Cir. 1978). Petitioners have stipulated that they failed to report $30,983 and $23,745 of embezzled funds on their 2000 and 2001 Federal income tax returns, respectively, and that these omissions gave rise to understatements of their taxes as respondent determined. Accordingly, there is no question as to the existence of

underpayments. The question is whether the underpayments are due to fraud.

Because fraudulent intent can seldom be established by direct proof of the taxpayer's intention, fraud may be proved by circumstantial evidence. See Toushin v. Commissioner, 223 F.3d 642, 647 (7th Cir. 2000), affg. T.C. Memo. 1999-171; Pittman v. Commissioner, 100 F.3d 1308, 1319 (7th Cir. 1996), affg. T.C. Memo. 1995-243. Badges of fraud include but are not limited to: Making a substantial and consistent understatement of income; dealing in cash; failing to maintain adequate records; giving implausible or inconsistent explanations of behavior; participating in an illegal activity; and attempting to conceal such activity. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). While no single factor is necessarily conclusive, the existence of several indicia is persuasive circumstantial evidence of fraud. Id.

The evidence convincingly establishes that the underpayments for 2000 and 2001 were due to petitioner's fraud. Petitioner is an intelligent and educated woman with nearly two decades of accounting experience. As part of her professional duties, she prepared and filed payroll and unemployment tax returns and verified the accuracy of employees' Forms W-2. She also prepared her family's income tax returns.

Petitioner pleaded guilty to embezzling approximately $110,310 from 1997 to 2001. Her multistep embezzlement scheme evinces a high level of sophistication and a profound breach of fiduciary responsibilities. She successfully concealed her embezzlement scheme for a number of years before getting caught. Her failure to report any of the embezzled funds as income resulted in recurring and substantial understatements of income.

Petitioner testified that she "just kept thinking [she would] be able to put the money back somehow." This testimony is difficult to square, however, with her admission that she kept no records of the amounts of cash she embezzled and the fact that it was only during her criminal trial that for the first time she saw some "figures" as to the amount of her embezzlement. These implausible or inconsistent explanations of her behavior, as well as her failure to keep records, are indicia of fraud.

Petitioner's primary defense is that her failure to report the embezzled cash was not due to fraud because she did not know she was required to report it.[4] She claims she "never thought about it." When a claim of ignorance or honest mistake is

---

[4]Although the distinction does not affect the result in this case, we note that respondent is not required to show that petitioner knew tax to be owing on the embezzled funds but rather that she believed tax to be owing. See McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); see also Toushin v. Commissioner, 223 F.3d 642, 647 (7th Cir. 2000) ("To establish fraud, the IRS must demonstrate by clear and convincing evidence that the taxpayer intended to evade taxes that he knew or believed he owed."), affg. T.C. Memo. 1999-171.

asserted, we consider the taxpayer's intelligence, education, and tax expertise in determining whether the requisite fraudulent intent has been established.  Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986).  In the final analysis, we cannot accept that a person of petitioner's intelligence, training, and experience could have systematically embezzled more than $110,000 over 5 years and never have thought about the tax consequences.

On the basis of all the evidence, we conclude and hold that respondent has met his burden of proving by clear and convincing evidence that the fraud penalty applies to petitioner.

B.    Statute of Limitations

Generally, the Commissioner must assess tax within 3 years after a return is filed.  Sec. 6501(a).  As an exception to this general rule, "In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time."  Sec. 6501(c)(1).  We have held that petitioner committed fraud.  Accordingly, the period of limitations on assessment of petitioners' 2000 and 2001 taxes is lifted with respect to both petitioners.  See Pert v. Commissioner, 105 T.C. 370, 378-379 (1995).

To reflect the foregoing,

Decision will be entered

for respondent.