T.C. Memo. 2011-185

UNITED STATES TAX COURT

MARK DEVRIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CAROLEEN DEVRIES, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16178-06, 16201-06.   Filed August 4, 2011.

Mark DeVries and Caroleen DeVries, pro se.

Donna F. Herbert, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  Respondent determined deficiencies in and additions to tax in petitioners' Federal income taxes for 1996 through and including 1998 (years at issue) as follows:

## Mark DeVries

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6651(f) | Sec. 6654 |
| 1996 | $8,676 | $6,356 | $449 |
| 1997 | 21,778 | 16,333 | 1,165 |
| 1998 | 41,057 | 30,792 | 1,878 |

## Caroleen DeVries

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 1996 | $6,459 | $1,408 | $1,564 | $331 |
| 1997 | 13,003 | 2,925 | 3,250 | 695 |
| 1998 | 31,720 | 7,137 | 7,930 | 1,451 |

Respondent determined that petitioner Mark DeVries (Mr. DeVries) was liable for additions to tax under section 6651(f)[1] for fraudulent failure to file a timely income tax return (fraudulent failure to file) and alternatively under section 6651(a)(1) for failure to file a return timely (late filing) and section 6651(a)(2) for failure to pay tax (late payment). Respondent further determined that petitioner Caroleen DeVries (Mrs. DeVries) was liable for late-filing and late-payment additions to tax. Respondent also determined that petitioners were liable for the years at issue for additions to tax under section 6654 for failure to pay estimated taxes (estimated tax addition).

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After concessions, the issues to be decided include whether Mr. DeVries is liable for the fraudulent failure to file additions to tax under section 6651(f). We hold that he is liable. We therefore do not need to decide alternatively whether he is liable for the late-filing and late-payment additions to tax. We are also asked to decide whether Mrs. DeVries is liable for the late-filing and late-payment additions. We hold that she is liable. Finally, we are asked to decide whether petitioners are liable for the estimated tax additions under section 6654. We hold that petitioners are liable.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulated facts and accompanying exhibits are incorporated by this reference, and the facts are so found. The Court admitted additional facts and exhibits into evidence from petitioners and respondent, which are incorporated by this reference. Petitioners resided in Bakersfield, California when they filed the petition.

General Background of Petitioners

Petitioners were teenagers when they met in a church and have been married for over 35 years. They have four children, two of whom still lived with them during the years at issue.

Mr. DeVries, the brother of two older sisters and son of a general contractor, started as a plumber after graduating from

high school.  He continued working as a plumber and developed a profitable business.  Mr. DeVries considered himself self-employed during the years at issue.  He had the title of President and agent for service of process of DeVries Mechanical, Inc. (the company).[2]  He controlled the operations of his business.  He bid the plumbing jobs for his business.  The bids consisted primarily of small commercial plumbing installations.  Mr. DeVries was paid for his plumbing jobs directly.  He was paid mostly with checks that he personally deposited with a bank.  Mr. DeVries continued his plumbing work after he dissolved the company sometime after May 1998.

Mr. DeVries gave money to Mrs. DeVries for her to pay her personal expenses as well as the family expenses, including food, gasoline, utilities and property taxes.  Mrs. DeVries paid these expenses through a personal banking account.  Mr. DeVries funded the family's personal banking account from a business account.

Petitioners and their family lived a comfortable lifestyle.  They owned a home at Meacham Road in Bakersfield, California (Meacham Road house) for a decade before selling it in 1997 for $325,000.  Petitioners received a net amount of $123,164 from the house sale.  The next year, petitioners purchased a house on 21st

---

[2]Mr. DeVries could not recall if he owned 100 percent of the company.  The company's Federal income tax returns for 1996 and 1997 show that Mr. DeVries and Mrs. DeVries each owned 50 percent of the company.  Mr. DeVries' brother-in-law indicated at trial that Mrs. DeVries was also a director of the company.

Street (21st Street house), also in Bakersfield, through a trust called Sunset Investment Trust (Sunset Trust). Petitioners provided some or all of the approximately $200,000 Sunset Trust used to purchase the 21st Street house.

Mr. DeVries supervised and performed parts of an extensive remodeling of the 21st Street house. His remodeling efforts included expanding the garage and kitchen and adding a second floor.[3] Mrs. DeVries participated in the remodeling too. She selected the colors and chose the tile and flooring. Petitioners provided some or all of the funds Sunset Trust used to remodel the 21st Street house. The building permit showed that the estimated improvements cost $97,290. The property tax assessor increased the value of the 21st Street house by $100,000 as a result of the remodeling. Petitioners and their family resided in the 21st Street house after the remodeling.

Mrs. DeVries' sister, Sharon, married Ted Pierce (Mr. Pierce) sometime after petitioners were married. Mr. Pierce attended college as an accounting major, worked for an accountant and then went into business on his own. Mr. Pierce started working with Mr. DeVries after he was on his own.

During the years at issue Mr. DeVries and Mr. Pierce owned and rented small apartment buildings. Through a partnership,

---

[3]A local Bakersfield newspaper described the remodeling as a massive undertaking that nearly doubled the size of the home, adding 1,800 square feet to the 2,200-square-foot home.

they evenly split the income and expenses from the properties. The income and expenses of the joint rentals are reflected in Schedules E Mr. Pierce filed with tax returns for 1997 and 1998.[4]

Tax Returns and Payments

Petitioners filed Federal income tax returns and paid taxes for approximately 20 years.  Mr. Pierce prepared petitioners' tax returns for years up to and including 1995 but stopped when Mr. DeVries asked him to stop.  Mr. DeVries stopped filing tax returns for at least six years after getting in touch with other people who had advocated not filing returns.  Petitioners did not report income and made no estimated tax payments for the years at issue.[5]

Years after he stopped filing tax returns in approximately 1996, Mr. DeVries told a local newspaper in 2001 that, after studying the Code, he learned that all withholding is voluntary. He further stated that he had stopped withholding income taxes from his employees' paychecks about two or three years previously.

---

[4]Mr. DeVries received Schedules K-1 issued from HYS Investments, also showing rental income for 1997 and 1998.  The Court has not received information about the operations, partners or finances of HYS Investments beyond the Schedules K-1.

[5]Respondent has established and we find that Mr. DeVries' taxable income for the years at issue was $31,095, $50,738 and $104,191, respectively.  Respondent has established and we find that Mrs. DeVries' taxable income for the years at issue was $32,387, $55,865 and $110,167, respectively.

In 2010 Mr. DeVries filed a purported income tax return for the taxable year 1999 showing zero income. Mr. DeVries included an explanation listing various arguments deemed frivolous by this Court and other courts. He did so despite having been recently convicted of the crime of tax evasion, as we discuss below. Mr. DeVries maintained this meritless position at trial, stating that he had no self-employment income and was not engaged in a trade or business.

The company filed income tax returns for the years ending May 31, 1997 and 1998. Its returns reflect $22,000 of wages paid to Mrs. DeVries in 1996 for her duties as director and shareholder and zero wages paid to Mr. DeVries in those years.

Trusts and Planning Activities

Mr. DeVries continued his plumbing work after dissolving the company, and he began certain planning activities with his personal and professional assets. An entity called DMI Mechanical, Inc. was formed but never used, as Mr. DeVries decided to use trusts for his planning activities.

Through word of mouth, Mr. DeVries found a "guy out of Fresno" to form his trusts. Mr. DeVries paid him "a couple grand," even though he was not an attorney, because "everybody"

had trusts and "[t]rusts were formed all day."  Mr. DeVries formed at least two trusts.[6]

As mentioned previously, Sunset Trust purchased and remodeled the 21st Street house with funds Mr. DeVries provided. At Mr. DeVries' request, Mr. Pierce agreed to be trustee of the Sunset Trust.  Mr. Pierce did not know the terms of the trust, never saw any trust documents and was trustee in name only. Sunset Trust did not file tax returns.  Mr. Pierce testified that Mr. DeVries was the Sunset Trust even though petitioners' children were the beneficiaries.

Mr. Pierce also served as trustee for the Magnum Trust, which held Mr. DeVries' commercial building on R Street in Bakersfield, California R Street property).  The R Street property had the address of the company as well as other tenants. As with the Sunset Trust, Mr. Pierce did not know the terms of the trust, never saw trust documents and was trustee in name only.  Mr. Pierce testified that Mr. DeVries paid for the R Street property and was the true owner of that property.

---

[6]Mr. DeVries seems to have formed more than two trusts.  Mr. DeVries' lawsuit in the California Superior Court, Kern County, against Internal Revenue Service Revenue Officer Douglas G. McDonald and Revenue Agent Fred Chynoweth includes as plaintiffs DMI Mechanical, Magnum Property Management, Sunset Investment and TIGE Equipment, each of which is described as an unincorporated association.

Audit Examination

Revenue Agent Fred Chynoweth (RA Chynoweth), a longtime employee of the Internal Revenue Service (IRS) and experienced revenue agent, conducted petitioners' audit examinations after learning that petitioners had not filed Federal income tax returns for the years at issue. RA Chynoweth was unable to communicate directly with petitioners during the examination despite repeated IRS efforts to contact petitioners. At one point, RA Chynoweth went to Mr. DeVries' office and spoke through the door to a man who refused to open the door but said that Mr. DeVries was not present. RA Chynoweth left a card for Mr. DeVries but never received a call or a letter from Mr. DeVries in response. RA Chynoweth also issued a summons to Mr. DeVries, who did not comply with the summons and never provided RA Chynoweth any records.

Beyond nonresponsiveness, petitioners also made efforts to obstruct the IRS audit. Petitioners' representative and attorney, Milton H. Baxley II (Mr. Baxley), sent letters to the institutions to which RA Chynoweth issued summonses.[7]

---

[7]A jury convicted Mr. Baxley of two counts of violating a 2003 District Court order enjoining him from promoting, selling or advising individuals as to certain Federal tax matters and the IRS. Mr. Baxley consequently was sentenced to 18 months in prison and a $10,000 fine. He was connected with American Rights Litigators, also known as Guiding Light of God Ministries, an organization headed by Eddie Ray Kahn that promoted a tax fraud scheme.

Petitioners authorized both Mr. Baxley and Mr. Bryan Malatesta, on Forms 2848 attached to each of the letters, to represent them for the years 1985 through 2004.  The letters stated that the relevant IRS summons was unauthorized by statute, the Code has not been enacted as positive law, the IRS is not an agency of the United States government and the institution will be held liable if the requested documents are released without court order.  Mr. DeVries and the IRS were each sent a courtesy copy of each of the letters.

Later that year, Mr. Devries' son Jason Henry DeVries sent an invoice for $1 million to RA Chynoweth, billing the revenue agent for the use of purportedly copyrighted property.  Attached to the bill were the two alleged copyright violations.  The first was an IRS summons to Mr. DeVries as president of the company regarding tax years 1996 through 2000.  The second was a letter from RA Chynoweth to Brandon Mojarro (Mr. Mojarro) reqesting information about whether Mr. Mojarro rented a house to Mr. DeVries.

During the examination, Mr. DeVries also made a Freedom of Information Act (FOIA) request for RA Chynoweth's personnel file.

Mr. DeVries filed a lawsuit in the California Superior Court, Kern County, against IRS Revenue Officer Douglas McDonald

and RA Chynoweth in 2002.[8] Mr. DeVries alleged interference with contractual relations, libel, slander, nuisance, intentional and negligent infliction of emotional distress, trespass, conspiracy and imposition of a constructive trust. Mr. DeVries sought over $50 million in damages plus significant punitive damages and injunctions. He caused RA Chynoweth to be served with the lawsuit by a process server at his personal residence. Mr. DeVries' lawsuit was eventually dismissed.

Ultimately, petitioners' efforts to derail RA Chynoweth's investigation failed. Petitioners produced no documentation to RA Chynoweth during the course of his examination and, in the absence of cooperation, RA Chynoweth gathered information to complete his audit. RA Chynoweth identified details of petitioners' finances by bank account summonses, record searches, escrows, Information Returns Processing (IRP) transcripts and other means. RA Chynoweth calculated petitioners' net taxable deposits from petitioners' accounts at San Joaquin Bank and Dean Witter. He calculated their community rental income, interest income and dividend income for the years at issue. RA Chynoweth calculated petitioners' community "other income" by reference to bank deposits for 1996 and 1997 and by estimating how much petitioners expended for the improvements on the 21st Street house in 1998. He further calculated their capital gain income,

---

[8]See discussion of the lawsuit supra note 6.

identified their taxable IRA distributions and noted Mrs. DeVries' wages reported by the company in 1996. RA Chynoweth used the information he compiled to prepare a community property allocation and substitutes for returns (SFRs) for petitioners for the years at issue, including section 6020(b) certifications for those SFRs.

Criminal Investigation and Conviction

Mr. DeVries' pattern of nonfiling eventually caused him to be indicted by a Federal grand jury on three counts of income tax evasion under section 7201 for taxable years 1999 through 2001, the three years immediately after the three years at issue. The indictment alleged that Mr. DeVries had not filed a tax return since 1995. It cited affirmative acts of evasion including using false employer identification numbers (EINs), using various individuals and business entities (including trusts) to conceal his income, running his income through trust entities, laundering money through bank accounts and participating in various avoidance measures. The indictment specified that Mr. DeVries controlled DMI Mechanical, Inc. and the company and was compensated so as to avoid IRS detection. The indictment also addressed the purchase of the 21st Street house by the Sunset Trust, which was paid for with cash, approximately 89 money orders purchased at various United States Post Offices and checks. After a jury trial, Mr. DeVries was convicted on all

three felony charges.  He was awaiting sentencing at the time of the trial in this case.

Deficiency Notices and Trial

Respondent determined deficiencies in, and additions to, each petitioner's Federal income taxes.  Petitioners timely filed petitions with this Court for redetermination.[9]

OPINION

In these consolidated cases, petitioners challenge respondent's determinations that two married individuals inappropriately or fraudulently failed to file returns or pay taxes.  Mr. DeVries started his plumbing work after high school and ran a successful operation for many years, including the years at issue.  Nevertheless, he and Mrs. DeVries stopped filing tax returns and paying taxes for a number of years.  Even now, after his criminal conviction, Mr. DeVries has filed a return based on frivolous positions.

At trial, Mr. DeVries called no witnesses and offered no evidence.  He repeatedly asserted that he could not remember information about the years at issue.  His elusive, self-serving testimony fell in sharp contrast to RA Chynoweth's helpful description of his audit process and creation of the SFRs.

---

[9]Respondent has since conceded some of the dividend and capital gain income set forth in the deficiency notices.

We begin by considering whether Mr. DeVries' failure to file Federal income tax returns was fraudulent under section 6651(f). We then decide whether Mrs. DeVries is liable for the additions to tax for late filing and late payment. Finally, we decide whether petitioners are liable for the estimated tax additions. Ultimately, we decide all issues in favor of respondent.

A. Fraudulent Failure To File Returns

Petitioners did not file timely Federal income tax returns for the years at issue. In fact, the record reflects that petitioners, as of the trial date, have yet to file their returns for the years at issue. Individuals whose gross income exceeds certain levels for a taxable year, however, are required to file an income tax return. Sec. 6012(a). If an individual fraudulently fails to file an income tax return, the Commissioner may impose an addition to tax of up to 75 percent. Sec. 6651(f). We must determine whether Mr. DeVries' failure to file timely was fraudulent within the meaning of section 6651(f).

Fraud is an intentional wrongdoing designed to evade tax known or believed to be owing. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Profl. Servs. v. Commissioner, 79 T.C. 888, 930 (1982). In determining whether a taxpayer's failure to file is fraudulent, we consider the same elements that are considered in imposing the fraud penalty under section 6663. Clayton v. Commissioner, 102 T.C.

632, 653 (1994). Those two elements of fraud are (1) the existence of an underpayment and (2) fraudulent intent with respect to some portion of the underpayment. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Clayton v. Commissioner, supra at 646.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Pittard v. Commissioner, 69 T.C. 391, 400 (1977). Fraud is never presumed and must be established by independent evidence that establishes fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96, 106, 112 (1969). Fraud may be proven by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Gajewski v. Commissioner, 67 T.C. 181, 199-200 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 210-211 (1992); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106.

We review Mr. DeVries' course of conduct in considering the second element, fraudulent intent, before focusing on the

underpayment.  Courts have developed several indicia, or "badges of fraud," from which the requisite fraudulent intent can be inferred.  They include:  (1) failing to file income tax returns, (2) understating income, (3) failing to maintain adequate records, (4) concealing income or assets, (5) failing to cooperate with tax authorities, (6) asserting frivolous arguments and objections to the tax laws, (7) lack of credibility in testimony, and (8) failing to make estimated tax payments.[10]  See Bradford v. Commissioner, supra at 307; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Kotmair v. Commissioner, 86 T.C. 1253 (1986).  This list is nonexclusive.  Niedringhaus v. Commissioner, supra at 211.  No single factor is necessarily sufficient to establish fraud.  The existence of several indicia, however, may constitute persuasive circumstantial evidence of fraud.  See Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). We now address which badges of fraud are present here.

1.   Failing To File Income Tax Returns

A taxpayer's filing of income tax returns in prior years is evidence that the taxpayer was aware of his or her obligation to file returns.  Id. at 701; see also Stalker v. Commissioner, T.C. Memo. 1981-544.  Petitioners filed Federal income tax returns and paid taxes for almost 20 years.  After 1995, petitioners embarked

---

[10]We address petitioners' failure to pay estimated tax payments infra under the subheading "Estimated Tax Additions."

on a course to avoid disclosing and paying their Federal tax liability.  They did not file a timely Federal income tax return for at least six years.

Failure to file income tax returns, even over an extended period of time, does not per se establish fraud.  Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Coulter v. Commissioner, T.C. Memo. 1992-224.  An extended pattern of failing to file income tax returns, however, may be persuasive circumstantial evidence of fraud.  Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Grosshandler v. Commissioner, supra at 19; Coulter v. Commissioner, supra.  Further, when a taxpayer's failure to file for several years is viewed in light of his or her previous filing of income tax returns for prior years, the taxpayer's nonfiling weighs heavily against him or her because the taxpayer is aware of the requirement.  Castillo v. Commissioner, 84 T.C. 405, 409 (1985).

Mr. DeVries claimed that he forgot whether he filed income tax returns for the years at issue.  This response is implausible and unacceptable.  Petitioners had a history of filing returns and paying taxes yet they failed to file a timely income tax return for each of the years at issue and the three subsequent years.  Indeed, Mr. DeVries specifically asked Mr. Pierce to stop preparing his individual returns, even though Mr. Pierce prepared

corporate income tax returns for the company for 1996 and 1997.[11] Mr. DeVries was indicted by a Federal grand jury on three counts of violations of section 7201 (income tax evasion) for the three years after the three years at issue.  Respondent contends and we are persuaded that Mr. DeVries' pattern of failing to file is indicative of Mr. DeVries' fraudulent intent to evade tax liability.

2.  Understating Income

Consistent failure to report substantial amounts of income over a number of years is, standing alone, highly persuasive evidence of fraudulent intent.  See Temple v. Commissioner, T.C. Memo. 2000-337, affd. 62 Fed. Appx. 605 (6th Cir. 2003); see also Holland v. United States, 348 U.S. 121 (1954).  Mr. DeVries failed to report taxable income over a 3-year period exceeding $170,000.  Respondent argues, and we agree, that his failure to report such substantial income is an indication of fraud.

3.  Failing To Maintain Adequate Records

A taxpayer's destruction of books and records of his or her income-producing activity further demonstrates a willful attempt to defeat and evade taxes.  Spies v. United States, 317 U.S. 492, 499 (1943); Toushin v. Commissioner, 223 F.3d 642, 647 (7th Cir. 2000), affg. T.C. Memo. 1999-171.  Mr. DeVries failed to provide books and records for any of his income-producing activities for

---

[11]Mr. DeVries signed one of those two returns.

the years at issue.  When asked if he kept records, Mr. DeVries testified "I would say yes during that time period."  When asked if he provided those records to his return preparer he testified "I would have if I kept it."  At the time of trial, however, Mr. DeVries had no records of his income during the years at issue.  Furthermore, he had no recollection of his income, his employees, payments by others into his trusts or other financial matters.  He simply stated that it was a long time ago and he could not remember.  We find that Mr. DeVries' failure to maintain existing records, coupled with his alleged inability to recollect significant information, suggests that he sought to conceal his income and fraudulently evade his income tax liabilities for the years at issue.

4.  <u>Concealing Assets</u>

Concealing assets or income is also an indicium of fraud. <u>Bradford v. Commissioner</u>, 796 F.2d at 307-308; <u>Recklitis v. Commissioner</u>, <u>supra</u> at 910.  Respondent contends, and we agree, that petitioners took affirmative steps to conceal their income and assets through the use of trusts as nominees.

A nominee is an entity or individual who holds bare legal title to assets owned by another entity or individual.[12]  See

---

[12]Respondent is entitled to take collection action against a nominee to collect the outstanding tax liabilities of the taxpayer who transferred the assets to the nominee.  See <u>G.M. Leasing Corp. v. United States</u>, 429 U.S. 338, 350-351 (1977);

(continued...)

Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000); Criner v. Commissioner, T.C. Memo. 2003-328; Beck v. Commissioner, T.C. Memo. 2001-270. Placing title to assets in the name of nominees evidences a taxpayer's fraudulent intent. See Leggett v. Commissioner, T.C. Memo. 1999-100, affd. without published opinion 221 F.3d 1357 (11th Cir. 2000).

Mr. DeVries created the Sunset Trust when he and his wife purchased the 21st Street house. He also created the Magnum Trust to hold his R Street property. Mr. DeVries named his brother-in-law, Mr. Pierce, as trustee of both trusts. Mr. Pierce testified credibly that petitioners owned the properties, he was trustee in name only and he performed no duties as trustee. Petitioners maintained control of the properties and used the trusts as their nominees to conceal their assets. By way of example, they substantially remodeled the 21st Street house, allegedly owned by the Sunset Trust, before moving into their new home. Mr. DeVries' use of the trusts as nominees demonstrates his fraudulent intent to evade the assessment and payment of his Federal tax liabilities for the years at issue.

5.   Failing To Cooperate With Tax Authorities

We next consider petitioners' level of cooperation with respondent. Failure to cooperate with the IRS is an indicium of

_____

[12](...continued)
Criner v. Commissioner, T.C. Memo. 2003-328.

fraud.  Bradford v. Commissioner, supra at 307; Recklitis v. Commissioner, 91 T.C. 874 (1988).  Petitioners did not cooperate with respondent's investigations.  In fact, petitioners went to great lengths to impede respondent's investigations and to deter RA Chynoweth.

Petitioners did not meet with respondent, respond to his summons or provide any documentation.  When respondent issued summonses to various institutions with respect to petitioners' records, petitioners' authorized representative, Mr. Baxley, sent intimidating letters to those institutions.  Petitioners' son also sent an invoice to RA Chynoweth for alleged copyright infringement.  Mr. DeVries filed a FOIA request for RA Chynoweth's personnel file.  He filed a lawsuit against RA Chynoweth and IRS Revenue Officer Douglas McDonald, making outrageous claims and seeking injunctions and millions in damages.  Mr. DeVries had RA Chynoweth served with process at his home.  Respondent argues, and we agree, that Mr. DeVries' actions demonstrate an intent to impede respondent's examination and investigation.  We find that petitioners failed to cooperate with respondent's agents and their efforts to hamper his investigation are further indicia of fraudulent intent.

6.  Asserting Frivolous Arguments

Petitioners relied on frivolous and meritless arguments to impede respondent's investigation, and they assert frivolous

arguments to support their position that they do not owe taxes. During RA Chynoweth's investigation, Mr. DeVries caused his agent to send frivolous correspondence to witnesses and the revenue agent. Mr. DeVries told a local newspaper that, after studying the Code, he learned that all withholding is voluntary. Petitioners asserted, in their pretrial memorandum, that they were not required to file because they had no self-employment earnings. Despite Mr. DeVries' criminal conviction for tax evasion, he filed a frivolous purported income tax return for the taxable year 1999 with the IRS. Mr. DeVries' purported return listed all "zeros" and included a disclosure statement with frivolous arguments. Mr. DeVries continued to argue these frivolous positions at trial.

Tax protester arguments may not be evidence of fraud in and of themselves, but they may be indicative of fraud if made in conjunction with affirmative acts designed to evade paying Federal income tax. See Kotmair v. Commissioner, 86 T.C. at 1260-1261; Fleischner v. Commissioner, T.C. Memo. 1995-389. Petitioners took or made affirmative acts designed to evade their tax liability. These affirmative acts include failing to file income tax returns, failing to maintain adequate records, concealing assets, failing to make estimated tax payments for the years at issue and failing to cooperate with tax authorities.

Accordingly, we find that Mr. DeVries' frivolous arguments support a finding of fraud.

### 7.  Lack of Credibility of Mr. DeVries' Testimony

A taxpayer's lack of credibility, inconsistent testimony or evasiveness is a factor in considering fraud.  Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25.  Mr. DeVries' extraordinary forgetfulness with respect to relevant information, including significant life events, suggests a lack of credibility and evasiveness.  Feigning that he could not remember filing a tax return because it was so long ago strains common sense.  His testimony and demeanor suggest fraud.

### 8.  Underpayment

Respondent has satisfied the second element of fraudulent failure to file by demonstrating the many badges of fraud present here.  We hold that respondent also has proven petitioners' underpayments for the years at issue.

Petitioners produced no records during the examination for the years at issue.  Consequently, respondent resorted to third-party information, including summoned bank records, information from the Kern County Assessor's office and other sources.

Congress authorized the Commissioner's estimation of income by any reasonable method, especially where a taxpayer fails to file returns and refuses to cooperate.  See Giddio v.

Commissioner, 54 T.C. 1530, 1533 (1970) (citing United States v. Johnson, 319 U.S. 503, 518 (1943)).

If a taxpayer provides no records, the Commissioner may reconstruct income on indirect evidence. See Holland v. United States, 348 U.S. at 130-133. Respondent introduced into evidence account records from San Joaquin Bank and Dean Witter. Bank deposits are prima facie evidence of taxable income. See Parks v. Commissioner, 94 T.C. at 658. Respondent provided tax returns of the company, copies of Schedules K-1 issued to Mr. DeVries by HYS Investments and copies of various real estate documents. Respondent also introduced into evidence a copy of the IRP transcript for each year at issue, showing income to petitioners from third-party information returns. Mr. DeVries confirmed that he was a self-employed plumber in the years at issue. Respondent has met his burden of proof.

We reject Mr. DeVries' reliance on Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), to argue that respondent has failed to meet his burden. Respondent connected Mr. DeVries with income-producing activities and introduced evidence that petitioners received unreported income. See id. at 361–362.

We further reject Mr. DeVries' argument that respondent's deficiency notices are time barred. Generally, tax imposed by the Code must be assessed within three years after the return is

filed.[13]  Sec. 6501(a).  If no return is filed, the tax may be assessed at any time, however.  Sec. 6501(c)(3).  The bar of the limitations period is an affirmative defense and the party raising the defense must specifically plead and prove it.  Rules 39, 142(a); Hoffman v. Commissioner, 119 T.C. 140, 146 (2002).  To prove this defense, petitioners must establish the filing date of the returns and that respondent assessed the relevant amounts after the 3-year period for assessment.  See Hoffman v. Commissioner, supra at 146.  Petitioners have not proven that they filed returns for the years at issue and Mr. DeVries even testified that he did not recall whether he filed returns for those years.  Petitioners have failed to prove their defense.

We further reject petitioners' argument that the deficiency notice cannot contain adjustments for rental income unless respondent first completes a partnership-level proceeding.  Even if the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, procedures apply to HYS Investments,[14] respondent may still conform Mr. DeVries' return to the partnership return without conducting a partnership

---

[13]References in the Code to tax generally include additions to tax, additional amounts and penalties.  See sec. 6665.  We therefore apply the limitations provisions of sec. 6501 to decide whether the deficiencies and the additions to tax were timely assessed.

[14]The parties have not shown whether HYS Investments is subject to the TEFRA partnership procedures or excepted as a small partnership under sec. 6231(a)(1)(B).

proceeding.  See sec. 6222(c).  Respondent did not make adjustments to any partnership items.

We also reject petitioners' argument that respondent's deficiency notice and additions to tax cannot stand because respondent omitted evidence of the minimum filing amounts for the years at issue.  We take judicial notice that individuals who were married filing separately were required to file a tax return for each of the years at issue if their gross income exceeded $2,550, $2,650 and $2,700, respectively, for those years.  See Wilson v. Commissioner, 77 T.C. 324, 326 (1981).  Respondent has established and we find that each petitioner had gross income far in excess of the filing requirements for each of the years at issue.

Finally, we note that petitioners made, but failed to argue or support, a frivolous allegation that the person who issued the deficiency notices lacked authority.  It is well established that the Secretary or his delegate may issue deficiency notices.  Secs. 6212(a), 7701(a)(11)(B), (12)(A)(i); see Nestor v. Commissioner, 118 T.C. 162, 165 (2002).

Petitioners' legal arguments all fail.  Petitioners also claim that all income was in their trusts and that they had no income during the years at issue, but offer us no factual or legal support.  We sustain respondent's income tax determination for each petitioner for each year at issue.  We further find that

respondent has satisfied his burden of proof with respect to Mr. DeVries' underpayment of tax for the fraudulent failure to file additions to tax.

9. <u>Summary of Fraudulent Failure To File</u>

Many badges of fraud upon which this Court customarily relies are present here. Considering all of the facts and circumstances, we find that respondent has proven by clear and convincing evidence that Mr. DeVries' failure to file income tax returns for the years at issue was fraudulent. Accordingly, Mr. DeVries is liable for the section 6651(f) additions to tax for the years at issue. We therefore need not address whether he is liable for the late-filing and late-payment additions. We do, however, consider whether Mrs. DeVries is liable for these additions to tax.

B. <u>Failure To File and Failure To Pay</u>

Respondent determined that Mrs. DeVries is liable for the late-filing and late-payment additions. Petitioners failed to assign error in the petition regarding these additions to tax, so they are deemed conceded. See Rule 34(b)(4). Respondent has no obligation to satisfy a burden of production with respect to a penalty or addition if petitioners do not assign error to his determination. See <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 206 (2006), affd. 521 F.3d 1289 (10th Cir. 2008); <u>Swain v.</u>

Commissioner, 118 T.C. 358, 363 (2002).  Although they are deemed concarded, we briefly address these additions.

The late-filing addition to tax is imposed for failure to file a tax return on or before the specified filing date unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).  The Commissioner has the burden of production with respect to additions to tax.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet this burden, the Commissioner must produce sufficient evidence establishing that it is appropriate to impose the additions to tax.  See id. at 446-447.  If the Commissioner meets his burden, then the taxpayer bears the burden of proving that the late filing or nonfiling was due to reasonable cause and not willful neglect.  Id. at 446.

Respondent satisfied his burden of production by introducing evidence showing that petitioners did not file their income tax returns for the three years at issue.  Mr. DeVries testified that he did not recall whether he filed returns for the years at issue.  He could not recall when he stopped filing.  Petitioners have not demonstrated that they filed income tax returns or that they failed to do so for good reason.  Mrs. DeVries has not proven that her failure to file is due to reasonable cause and not due to willful neglect.  We sustain respondent's

determination that Mrs. DeVries is liable for the late-filing additions to tax.

We next consider whether Mrs. DeVries is liable for the late-payment additions to tax. See sec. 6651(a)(2). Respondent prepared SFRs under section 6020(b) for the years at issue. SFRs made by the Secretary under section 6020(b) are treated as the returns filed by the taxpayer for purposes of determining whether the section 6651(a)(2) addition to tax applies. Sec. 6651(g)(2); Wheeler v. Commissioner, supra at 208-209.

The Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made if he relies on an SFR to assert the failure to pay addition. See Cabirac v. Commissioner, 120 T.C. 163, 170-171 (2003). Respondent introduced into evidence section 6020(b) certifications and RA Chynoweth credibily testified that he properly prepared SFRs and the required documentation. He further testified that slightly modified versions of his reports were attached to the deficiency notices issued to petitioners. We find that RA Chynoweth properly prepared SFRs and that Mrs. DeVries has not paid the tax due.[15] She also has not established

---

[15]Petitioners cite Wheeler v. Commissioner, 127 T.C. 200 (2006), affd. 521 F.3d 1289 (10th Cir. 2008), to support their position that respondent may not assess penalties under sec. 6651(a)(2). The facts of this case are different from those in Wheeler, where the Commissioner provided significantly less evidence regarding the SFR.

that her failure to timely pay was due to reasonable cause and not willful neglect.  Accordingly, she is liable for the late-payment additions.

C.  Estimated Tax Additions

Finally, we consider respondent's determination that each petitioner was liable for an estimated tax addition under section 6654(a) for each year at issue.  A taxpayer generally has an obligation to pay estimated income tax for a particular year only if he or she has a required annual payment for that year.  Sec. 6654(d).  The required annual payment is equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or if no return is filed, 90 percent of the tax for such year) or (2) 100 percent of the tax shown on the return if the taxpayer filed a return for the immediately preceding tax year.  Sec. 6654(d)(1)(B); Wheeler v. Commissioner, supra at 210-211.

Petitioners failed to file individual Federal income tax returns for any of the years at issue.  Respondent provided petitioners' Federal income tax return for 1995, the year immediately preceding the years at issue.  Petitioners had a required annual payment for each of the years at issue but did not make any estimated tax payments.  Petitioners failed to present any evidence to contradict respondent's determination, and none of the statutory exceptions under section 6654(e)

applies.  Petitioners are therefore liable for the estimated tax addition under section 6654(a) for each of the years at issue.[16]

D.  <u>Conclusion</u>

We have considered petitioners' other arguments, and to the extent they are not addressed, we find them to be irrelevant, moot, or meritless.

To reflect the foregoing and the concessions of the parties,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.

---

[16]The failure to make estimated tax payments is also a badge of fraud evidencing the taxpayer's fraudulent intent.  <u>Bradford v. Commissioner</u>, 796 F.2d 303, 308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Clayton v. Commissioner</u>, 102 T.C. 632, 647 (1994).